NIAGARA, LOCKPORT AND ONTARIO POWER CORPORATION, Claimant, *v.* STATE OF NEW YORK, Defendant.  (Claim No. 27502.)

Court of Claims, May 23, 1946.

*A. T. O'Neil* and *Frank M. Osta* for claimant.

*Mark M. Turner* for New York Central Railroad Company.

*Percy R. Smith* for Pennsylvania Railroad Company.

*Elmer R. Weil* and *Ralph A. Lehr* for County of Erie.

*Nathaniel L. Goldstein, Attorney-General* (*James G. Austin* and *Joseph A. Drago* of counsel), for defendant.

BARRETT, P. J.   Claimant is a public service corporation engaged in the transmission and distribution of electricity in the counties of Erie, Chautauqua, Allegany and Cattaraugus and in northern Pennsylvania.

For the purpose of eliminating a railroad grade crossing at grade at the Orchard Park Road in the town of West Seneca in Erie County, the State appropriated five easements in three parcels of claimant's lands.   Four of claimant's trunk transmission lines were located upon and over the three parcels of land in question and other lands contiguous thereto.   These lines are designated as 41–42, 131–132, 141–142 and 151–152.

In this claim damages are sought for the value of the land taken, for removing, relocating and reconstructing lines 41–42, 131–132, 141–142 and 151–152, including their supporting structures and attachments and also for constructing and removing structures for temporarily rerouting lines 131–132 and 141–142.   As to the value of the land per acre, and as to the reasonableness of the cost of the work required by reason of the appropriations, there is no dispute.

Orchard Park Road ran through the said parcels of land. This road, the State claims, was ninety-nine feet wide, while claimant contends that it was but sixty-six feet wide.   The determination of that question, of course, affects the amount of damages to which claimant is entitled.

From State's Exhibit B, it appears that the road has existed from the first settlement by white people in Erie County.   It also appears from Exhibit C, taken from the Buffalo Town Book,

1814–1832, in the library of the Buffalo Historical Society, that a survey of the road dated July 11, 1827, showed the width of the road to be one and one-half chains or ninety-nine feet wide. This survey was approved by the Commissioners of Highways of the Town of Buffalo on December 1, 1827. From the traverse of the road taken July 12, 1827, as contained in Book No. 1, Road Records of the Town of Hamburg, it appears that the width of the road was one chain, fifty links or ninety-nine feet. An instrument recorded March 17, 1828, signed by the surveyor and the commissioners, refers to an alteration in the road, made on May 16, 1829, and states that the road is one chain and fifty links wide.

The incorporation of companies to construct plank roads and turnpikes was provided for by chapter 210 of the Laws of 1847, which also provided that such roads and turnpikes should be laid out, at least four rods wide. By deed dated May 18, 1848, and recorded March 8, 1849, the Town of Hamburg conveyed to the East Hamburg Turnpike Company, the right to use and pass over as a part of the turnpike road of said company, so much of the highway in the town of Hamburg as should be requisite for said purposes.

It appears that from 1849, the road was used to a width of sixty-six feet.

The two deeds conveying to claimant the parcels designated on Exhibit 6 as L-29 and L-30, each transferred title thereto to the center line of the road and together made one strip of land running across the road. The parcel designated on Exhibit 6 as L-24 was across the road at a point east of the parcels described as L-29 and L-30. The map attached to the deed conveying the parcel designated as L-64, indicates that the road was sixty-six feet wide and that the center line of said road was the lot line between lots 294 and 317. The survey notes of the Ogden Land Company of eight lots, including 294 and 317, indicate that the center line of said road is the lot line of all of the lots referred to in the survey notes.

The surveys showing the road to be one and one-half chains or ninety-nine feet wide (Exhibits C, O-R, T, U) indicate the width of the highway but do not show whether the public had a fee or an easement therein. There is no proof that the State or any municipal corporation ever had a fee to the land upon which the road was situated. While the Town of Hamburg by deed dated May 18, 1848, conveyed to the East Hamburg Turnpike Company the right to use and pass over as a part of the turnpike road of the company, so much of the highway in the

town as shall be requisite, it does not appear as to what happened after this corporation ceased to function.

The deeds and exhibits in the case indicate that title to the highway was in the owners of adjoining lots, but they also indicate that the public had a highway easement of ninety-nine feet constituting the road and a finding is made accordingly.

It appears that in the appropriation maps herein, the State considered the road as being sixty-six feet wide, being the width to which it was used from 1849. There are references in the record to other claims for appropriations in which it was found as a fact that said road was but sixty-six feet in width. In those cases, no question was raised as to the width of the road. The appropriation maps in those claims indicated the road to be sixty-six feet wide and both parties apparently accepted that width. As the question therefore was not passed upon by the court, said finding is not controlling here. Therefore, claimant contends that as the State had only an easement to the land, upon which the highway ran, the failure to use thirty-three feet of the road for a period of more than six years constituted an abandonment of the easement to the extent of that thirty-three feet. In support of that contention it cites section 205 of the Highway Law. (*Gucker* v. *Lewis,* 249 App. Div. 858; *Matter of City of New York [Ludlow Avenue]*, 164 App. Div. 839.) However, under the provisions of section 205 of the Highway Law, it has been held that a highway is deemed abandoned only when it is not used for its entire width and that no abandonment occurs if any portion of its width is used for highway purposes. (*Mangam* v. *Village of Sing Sing,* 26 App. Div. 464, affd. 164 N. Y. 560; *Barnes* v. *Midland R. R. Terminal Co.,* 218 N. Y. 91, 98–99; *Driggs* v. *Phillips,* 103 N. Y. 77; *Shipston* v. *City of Niagara Falls,* 187 App. Div. 421.) The cases of *Gucker* v. *Lewis (supra)* and *Matter of City of New York (Ludlow Avenue) (supra)* are distinguishable, as the lands therein involved were never used for highway purposes. This distinction is pointed out in *Matter of City of New York (Ludlow Avenue) (supra,* p. 844). It is presumed that the easement continues and the burden of proving the contrary rests on claimant. (*Matter of Scheibel* v. *O'Brien,* 230 N. Y. 277, 281.) There is no such proof and therefore the highway for its entire width of ninety-nine feet is still subject to the easement.

The parcels appropriated for the easement contained 0.567 acres of the value of $213. One hundred twelve one-thousandths (0.112) acres subject to the highway easement had only a nominal value. (*Matter of City of New York [Braddock Ave.],* 278 N. Y.

163.) The remaining 0.455 acres not subject to an easement were of the value of $168.20, to which amount claimant is entitled.

As lines 41–42 and 151–152 were located within the ninety-nine-foot right of way, the cost of removing them is not allowed.

Claimant seeks to recover the cost of temporarily relocating lines 131–132 and 141–142, in the sum of $1,956.88. The supporting structures for these lines were not located within the right of way of the highway easement.

Claimant is entitled to recover the cost of reconstruction but is not entitled in addition thereto, to the cost of the temporary structures. It would not be entitled to compensation for any loss resulting from interference with its business during the period of the work and it follows therefore, that it is not entitled to the cost of temporary expenditures to prevent such loss. (*Coffey* v. *State of New York,* 291 N. Y. 494; *Moller* v. *State of New York,* 267 App. Div. 924, 936; *Banner Milling Co.* v. *State of New York,* 240 N. Y. 533, certiorari denied 269 U. S. 582; *New York Telephone Co.* v. *State of New York,* 169 App. Div. 310, affd. 218 N. Y. 738; *Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583, 587.) *Matter of Town of Cheektowaga Grade Crossings* (259 App. Div. 141, affd. 283 N. Y. 687) and *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345) are not applicable as the structures involved in those cases were located in public streets while the structures involved here were not within the ninety-nine feet but were on land owned by claimant in fee, except that a small portion thereof was subject to the public highway easement.

Damages are sought for the cost of reconstructing lines high enough to clear the surface of the new highway. Such damages are *damnum absque injuria.* (*Beck Properties* v. *State of New York,* 184 Misc. 148, 149.) Claimant is entitled only to the cost of replacing the original structures.

Claimant's total amount of $2,537.31 for the cost relating to line 41–42, must be reduced by the sum of $120, the cost of moving it from the State's ninety-nine foot right of way, and must be further reduced by the sum of $1,671.11, the cost incurred by reason of the change in grade, making a net cost of $746.20, to which amount claimant is entitled.

Claimant's total amount of $3,857.01 relating to the cost in connection with line 131–132, must be reduced by the sum of $2,599.76, the cost arising out of the change of grade, making a net cost of $1,257.25, which amount claimant is entitled to recover.

Claimant's total figure of $4,109.95, relating to the cost in connection with line 141–142, must be reduced by the sum of $2,852.70, the cost arising out of the change of grade, making a net cost of $1,257.25, to which claimant is entitled.

Claimant's total amount of $1,257.25, the cost incurred in connection with line 151–152, must be reduced by the sum of $300, the cost of removing the said structures from the State's right of way, making a net cost of $957.25, which claimant is entitled to recover.

Claimant is therefore entitled to recover as follows:

| | |
|---|---|
| Value of easements appropriated .................. | $168.20 |
| Cost relating to line 41–42 ........................ | 746.20 |
| Cost relating to line 131–132 ..................... | 1,257.25 |
| Cost relating to line 141–142 ..................... | 1,257.25 |
| Cost relating to line 151–152 ..................... | 957.25 |
| Total ...................................... | $4,386.15 |