## UNITED STATES v. CITY OF NEW YORK.

No. 173, Docket 20868.

Circuit Court of Appeals, Second Circuit.

May 19, 1948.

---

Asst. Atty. Gen., and Roger P. Marquis and S. Billingsley Hill, Attys., Dept. of Justice, both of Washington, D.C., on the brief), for plaintiff.

Alfred D. Jahr, of New York City (John P. McGrath, Corp. Counsel, and Harry E. O'Donnell, both of New York City, on the brief), for defendant.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The questions here involved concern the amounts to be awarded in condemnation proceedings to a municipality for the taking of streets, bridges, and other facilities used or usable by the City for the public benefit. Involved are segments of three public streets, one containing a bridge and trolley line, and two parcels of land under a canal and boat basin—all taken by the United States upon its expansion of the Brooklyn Navy Yard. The City has claimed a fair value for the interests taken amounting to the total sum of $1,907,834.79. On the other hand, the United States contended for the allowance of only the cost of providing substitute facilities. The three commissioners appointed to fix the award adopted the principles advanced by the United States with one exception. Thus on their original report they made purely nominal awards of $1 each for the parcels represented by the streets and the land under water and, for the Washington Avenue bridge, built in 1936 and 1937 with federal funds, they allowed only the sum of $5,303, being the salvage realized by the United States, instead of the sum of $557,984.86, claimed by the City as the cost of reproduction, less depreciation. They further allowed the cost of replacing a high tension electric power line for the operation of subway and trolley feeder lines, in the amount of $169,443.17. But, over the plaintiff's vigorous objection, they allowed the City the sum of $515,446.51 for increased operating costs because a trolley line formerly operating on one of the streets taken must now operate over the City's existing facilities, but by a route then found to be .625 of a mile longer. This sum represented a capitalization at 6

See also United States v. 25.4 Acres of Land, etc., D.C., E.D.N.Y., 61 F.Supp. 251.

Harry T. Dolan, Sp. Asst. to Atty. Gen., of Brooklyn, N. Y. (A. Devitt Vanech,

per cent of what was found to be the annual increased operating cost. Also allowed were the sums of $1,644.67 and $2,340 for a new turnout and crossing required to utilize this alternate route. The total they then recommended was $694,951.84 for the items here in dispute, plus $7,538.40 for a parcel which is not in dispute. Upon the hearing on this report, the court accepted it as to the undisputed parcel, but, at the parties' request, returned it for further evidence on the other items. D.C., E.D.N.Y., 61 F.Supp. 251. The commissioners did hear further evidence, but the only changes they made (outside of increase of the allowance for the turnout to $1,655.67) were to reduce the allowance for rerouting the car line to $509,649.69 on finding the increased mileage to be only .61 of a mile, and to reduce the item for replacing the power line by $18,272.19, the salvage value to the City of the old line, thus making the total award on these items $670,112.34. Upon hearing the objections to this second report, the court accepted it with the exception of the award for rerouting the street cars, thus making its award for these items the sum of $160,473.65. D.C., E.D.N.Y., 71 F.Supp. 255. The appeals of both parties bring the judgment before us for review.

More specifically the City of New York seeks to recover compensation for (1) the value of the three streets taken (Washington Avenue, Taylor Street, Hewes Street), together with their curbing, sidewalks, pavement, lamp posts, water mains, and sewers, the latter figured on the basis of original cost, less depreciation; (2) the expenses of widening Park Avenue and Kent Avenue claimed to be made necessary by the increased traffic upon them as the result of the closing of the three streets; (3) the reproduction cost, less depreciation, of the Washington Avenue bridge; (4) the taking of certain land under water in Wallabout Channel and Kent Avenue Basin; (5) the increased cost of operating the rerouted trolley line, the relocated line over existing facilities being .61 of a mile longer; and (6) the cost of relocating certain high tension power lines for the operation of subway and trolley feeder lines, together with the reproduction cost new, less depreciation of the old line. These items on their valuation produced the sum of $1,907,834.79 as claimed. They are more fully described in the carefully considered opinion, D.C., E.D.N.Y., 71 F.Supp. 255, which Judge Byers wrote in disposing of the case below. He held that the proper measure of compensation in the taking of public streets from a city was the cost of providing substitute facilities.[1] Acting on this principle, and since no substitute streets were necessary, he overruled the City's objections and confirmed the various limited awards of the commissioners as stated, while he rejected their allowance for increased operating cost of the streetcar line on the ground that no actual increased expense to the City was shown.

The appeal of the City brings before us the entire issue of the proper legal basis of an award to a governmental unit when its facilities are taken by an overriding governmental agency. The appeal of the United States is, however, precautionary only. It is directed to the award for the relocation of the power line which it does not wish reversed. But in the event of reversal on the major issue and a holding that relocation cost is not the correct measure of compensation for the taking of city streets, then it says cogently that the rule would be equally erroneous as applied to the taking of the City's power line. Since we agree with its position as accepted below on the main issue, we need not consider its appeal further.

■ The rule governing decision here is quite definite. The true measure of compensation when a municipality's streets are condemned is the cost of providing any necessary substitutes. When no substitute facilities are necessary, it follows that no compensation is allowed. The rationale is clear. If the municipality has not had to provide substitutes, then it has suffered no financial loss and hence is not entitled to substantial damages. Indeed, the taking re-

---

[1] For his different approach to the question of an award to public utility companies, rather than a municipality, see United States v. 25.4 Acres of Land, D. C., E.D.N.Y., 71 F.Supp. 248, reversed by us this day in United States v. Brooklyn Union Gas Co., 2 Cir., 168 F.2d 391.

lieves it of the burden of maintaining such roads. It is in the business not of making profits, but of supplying public needs; and neither original cost nor reproduction cost of a street affords any real measure of the City's burden in taking care of these needs when a relocation of facilities becomes necessary. A reference to the recent cases demonstrates the quite universal acceptance of the rule thus applied below. United States v. Los Angeles County, Cal., 9 Cir., 163 F.2d 124; Woodville, Okl., v. United States, 10 Cir., 152 F.2d 735, certiorari denied 328 U.S. 842, 66 S.Ct. 1021, 90 L.Ed. 1617; United States v. Des Moines County, 8 Cir., 148 F.2d 448, 160 A.L.R. 953, certiorari denied Des Moines County v. United States, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786; Jefferson County, Tenn., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564, certiorari denied 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425; United States v. Wheeler Township, 8 Cir., 66 F.2d 977; United States v. 1,433 Acres of Land, etc., D.C. Kan., 71 F.Supp. 854; United States v. 0.886 of an Acre of Land, etc., D.C., E.D. N.Y., 65 F.Supp 827; United States v. Alderson, D.C., S.D.W.Va., 53 F.Supp. 528; see United States v. State of Arkansas, 8 Cir., 164 F.2d 943, also the Annotation, "Measure of compensation in eminent domain to be paid to state or municipality for taking of public highway or street," 160 A.L.R. 955.

■ While federal law governs, United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; State of Nebraska v. United States, 8 Cir., 164 F.2d 866; United States v. City of New York, 2 Cir., 165 F.2d 526, yet the New York law is to the same effect. City of Little Falls v. State, 198 App.Div. 488, 190 N.Y.S. 807; City of Little Falls v. State, 178 Misc. 1063, 37 N.Y.S.2d 463, 466, reversed on other grounds, 266 App.Div. 87, 41 N.Y.S. 2d 882, affirmed 291 N.Y. 755, 52 N.E.2d 963; Niagara, Lockport & Ontario Power Corp. v. State, 187 Misc. 527, 62 N.Y.S.2d 323. The cases cited by the City, Town of Nahant v. United States, 1 Cir., 136 F. 273, 69 L.R.A. 723, and Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360, stated no other rule. They held only that the state law of no compensation as between governmental agencies must yield to the federal law of compensation; they did not pass upon the amount of the award. In the second case the amount was agreed upon in the event of an award, while in the first it was expressly not considered, 136 F. 273, 283, and was eventually settled in accord with the principles herein stated in United States v. Town of Nahant, 1 Cir., 153 F. 520.

■ The City argues further that the condemnation required it to provide substitute highway facilities to the extent that it had to widen Park Avenue. The commissioners found to the contrary, and the court below held that there was sufficient evidence to support their finding. We agree. The evidence before the commissioners established that the widening of Park Avenue was planned prior to the taking here in issue and was carried through as part of a comprehensive plan involving a highway development connecting the Boroughs of Brooklyn and Queens. Hence the widening of the street was not dependent upon the condemnation. Nor was it designed or intended to provide a substitute for the streets here taken. Accordingly the expense of this improvement was properly disallowed as an item of award here.

■ Somewhat more involved is the issue as to the widening of Kent Avenue. The United States made available to the City a strip of land 27 feet wide along Kent Avenue and provided $134,097.76 with which that avenue was widened. The City contends that the strip given was to be paid for by an exchange of other property owned by the City. It argues that it is in effect giving value for the property which is necessary to provide substitute highway facilities. No reference is made to the record to substantiate the value of the property alleged to be given in exchange. Nor has any reference been made to the record to indicate that the City had to spend any money or had been put to any expense either in the acquisition of land for the widening of Kent Avenue or for

the actual construction done thereon. Consequently there is no basis for any claim of cost to the City for the widening of the Avenue. The controversy before the commissioners, however, revolved on the question of the character of the land granted to the City. The position of the City was that, since the permit for the use of the strip was revocable, it did not constitute a substitute facility. But as to this point the commissioners found that negotiations affecting the vesting of title in the City were then in process and that a substitute facility had been provided. The District Court agreed to this; and so, too, do we. The strip in question, plus the money provided for the widening of Kent Avenue, sufficiently met the requirement of providing an adequate substitute facility.

■ The City objects to the award of only the scrap value for the Washington Avenue bridge in lieu of the substantial amount it claims based on reproduction cost, less depreciation. But no attempt has been made to show grounds of distinction between the award to be made for the taking of a public bridge from that to be made for the taking of public streets. Nor do we think that different methods of measuring such awards can be supported. In each case the financial loss suffered by the municipality is the cost of providing any necessary substitute. The rationale and authorities requiring that compensation be measured by relocation cost in the condemnation of public streets is equally applicable to the taking of a public bridge. The City likewise objects to the nominal awards made for its land under water, but it offers no evidence as to value of the taking. The waterways involved were subject to easements of the United States for water commerce, and it appears that no substitute waterway facilities were required. We find no error in these conclusions.

■ With respect to the rerouting of the crosstown trolley line, this of course meant a journey longer by .61 of a mile, though over existing facilities except for the new turnout and crossing, the expenses of which were allowed. The City presses for an allowance for the increased operating cost of the rerouted line. As we have seen, it succeeded in persuading the commissioners to award it $509,649.69 as such cost. They arrived at this figure by finding that the additional mileage of .61 added 97,-261.04 car miles per year at a cost of 31.31 cents or a total of $30,578.98, which capitalized at the rate of 6 per cent yielded the result. We agree with the District Court's denial of this award and with its reasons. 71 F.Supp. 255, 260-262. The evidence shows that the net revenue per mile has increased since the rerouting of the trolley lines. Admittedly there has been a greater outlay in annual operating cost, but that appears to have been more than compensated for by the increased net revenue per car mile. Since there has been no convincing evidence of any annual recurring loss, the award was properly denied.

The judgment is therefore affirmed.