Jasen, J.
This appeal presents for our determination the construction of an Enabling Act (L. 1964, ch. 669) which confers jurisdiction upon the Court of Claims to determine claims of the respondent New York State Thruway Authority for expenditures charged to the Authority for improvements to State facilities made by or at the direction or request of any department or agency of the State ‘[1] for the sole benefit of the state and not required for thruway purposes ”.
Pursuant to chapter 669, the Authority filed a claim for improvements and additions to the State highway, parkway and canal systems and other State facilities involving 133 sites. One hundred nine of these sites involved grade separation structures which were, at State request, constructed wider and/or longer than required by then current engineering criteria at substantial expense to the Authority. The remaining portion of the claim involved improvements to the State Barge Canal, and the construction of new highways, spurs, intersections and arterial connections.
*514 The Court of Claims (Foster, J.), with the consent of the parties, appointed two eminent engineers and a distinguished former jurist to act as Referees.[1] (Cf. CPLR 4001; 4212; 4311; 4312, subd. 1; Court of Claims Act, § 9, subd. 9.) Seventy-eight days of trial ensued and a vast number of exhibits were received as evidence. The Referees found that the Authority was charged substantial sums for work done prior to creation of the Authority (1950) which had no Thruway purpose and solely improved State facilities. Similar expenditures were found to have been made out of Authority funds or out of State funds charged to the Authority after the Authority was created in 1950, pursuant to an agreement between State officers and the Authority. This agreement contemplated a final accounting at the completion of construction at which time the Authority would be reimbursed for the cost of State betterments having no Authority purpose by means of a credit against the Authority’s debt to the State. The Referees found that the total amounts expended for State betterments having no Authority purpose, but charged to the Authority at the request of the State, was $30,842,427. The Referees further found that the amount of the Authority’s debt to the State for advances was $24,668,713.54.[2]
The Court of Claims confirmed the Referees’ report and the Appellate Division, Third Department, unanimously affirmed.
Initially, it must be noted that the Authority’s claim relates only to the additional expense incurred in upgrading State facilities. The Authority concedes its responsibility to construct grade separation structures and other facilities considered adequate by standard engineering criteria to restore highways and other facilities disrupted by construction of the Thruway.
The State contends that the applicable statutes require the Thruway Authority to bear the entire cost of all grade separation facilities; that the allowance of costs in excess of physical *515 reproduction in kind of existing highways is erroneous; and that all the claimed benefits were required for Thruway purposes and were not for the sole benefit of the State.
It is concluded that the history of the Enabling Act (L. 1964, ch. 669) and the relevant statutory pattern support the Authority’s claim that the Legislature approved an apportionment of costs between the Authority and the State—the State being liable for that portion of the cost which was for the sole benefit of the State and was not required for Thruway purposes.
For purposes of analysis, the Authority’s claim should be divided into two parts. The first category of items is for moneys claimed by the State to have been spent by it for the construction of portions of the Thruway system prior to the creation of the Thruway Authority in 1950. Approximately 8 miles of the Thruway had been constructed by the State and another 29 miles were under construction. At this time, the Thruway was part of the State highway system and funded from moneys specifically appropriated for this purpose. (Highway Law, § 348.) Section 346 of the Highway Law directed that intersecting highways cross the Thruway on structures determined adequate for this purpose by the Superintendent of Public Works. The entire cost of these structures was to be included in the cost of the Thruway. (Highway Law, § 346.)
The Thruway Authority was created in 1950 by section 352 of the Public Authorities Law (L. 1950, ch. 143; Public Authorities Law [New York State Thruway Authority Act], § 350 et seq.; cf., also, L. 1951, ch. 776). The Authority was declared a public corporation, the board of which was to consist of three members appointed by the Governor with the advice and consent of the Senate. Dr. Bertram D. Tallamy, the Superintendent of Public Works, was appointed Chairman of the Authority, and served in this dual capacity until 1955.
The Thruway Authority was authorized by its charter to adopt resolutions assuming jurisdiction for its corporate purposes of those Thruway sections or connections (completed by the State) which it might deem advisable (Public Authorities Law, § 356). Upon assumption of such jurisdiction, it became indebted to the State “in an amount equal to the cost of construction by the state of thruway improvements ” (Public *516 Authorities Law, § 357, subd. 2[3]). Subdivision 2 of section 357 further provided that the Authority’s indebtedness upon assuming jurisdiction of these sections shall be paid at such time and in such manner as shall be agreed upon by the Authority and State Director of the Budget.
The second portion of the claim relates to construction subsequent to the creation of the Thruway Authority. This construction was financed with Authority funds and also by moneys advanced by the State for Thruway construction. The Authority was authorized by its charter to issue bonds and notes in an aggregate amount not to exceed $500,000,000 to finance construction of the Thruway.[4] The State guaranteed payment of these bonds, but two years were required for a constitutional amendment to effectuate that purpose. (Cf. N. Y. Const., art. X, § 6.)
In the meantime, the Legislature appropriated the sum of $80,000,000 from the Capital Construction Fund in the Supplemental Budget Act of 1951 (L. 1951, ch. 210, § 12; L. 1951, ch. 44, § 6) as an advance for Thruway construction and payment of Thruway liabilities incurred prior to April 1, 1951. These moneys were not advanced directly as a loan to the Authority, but were appropriated to the Department of Public Works to be disbursed on vouchers approved by the Superintendent of Public Works for contracts let by him. The Supplemental Budget Act restricted expenditures from the appropriation to expenses of necessary Thruway construction. Any expenditures made from this appropriation were to be repaid to the State in the manner provided by subdivision 2 of section 357 of the Public Authorities Law.
*517 The authority to determine the number, dimensions and design of structures necessary to eliminate highway grade crossings, formerly granted to the Superintendent of Public Works by section 346 of the Highway Law, was transferred to the newly created Thruway Authority which was also empowered to approve or reject the plans proposed by the Department of Public Works. (Public Authorities Law, § 359, subd. 3.) However, subdivision 1 of section 359 of the Public Authorities Law required that all engineering and design work be performed by the Department of Public Works, and in practice that department had complete control of the design and construction of the Thruway facilities and approaches until 1954. (L. 1954, ch. 517.) The major portion of the construction on the main line of the Thruway had been completed by that time.
This power to determine the dimensions, design and number of structures necessary to eliminate grade intersections represents the crux of the Authority’s case. The Department of Public Works, in designing and constructing Thruway facilities, adopted criteria designed to meet the anticipated needs of future traffic on State highways or for the benefit of the State in other respects. However, the Authority desired to keep the design and construction of grade crossing structures down to a size which was adequate under standard and accepted engineering criteria. An understanding was reached early in 1952 between the Authority and State officials that the Authority would make no determinations under section 359 of the Public Authorities Law as to what structures and facilities were necessary to be built, but would allow improvements to State highways and facilities to be included in the contracts for construction of the Thruway subject to a later accounting upon completion of the Thruway at which time the Authority would be reimbursed for the cost of such improvements and additions not required for Thruway purposes. This policy was deemed to apply to all subsequent construction. Pursuant to this understanding, the Authority approved whatever the State included in its designs.
Speed of construction was a prime consideration of both parties. The trial testimony demonstrates that construction would have been seriously delayed if portions of the projects considered to be State improvements were required to await *518 the time-consuming procedures mandated for State construction contracts. For the same reason, no attempt was made at the time of construction to separate and allocate costs for the benefit of the Thruway and those which benefited the State highway system.
This policy also applied to that portion of the Thruway built prior to 1950 as part of the State highway system. In 1953, the State Budget Director requested that the Authority pay $25,919,601.23, the full amount expended by the State for construction of portions of the Thruway prior to creation of the Authority. This sum included amounts spent by the Department of Public Works for improvements or additions to the State highway system. After further negotiations, the Authority paid the entire amount under protest, reserving its right under the 1952 agreement for reimbursement at an accounting to be held upon completion of the Thruway.
Beginning in 1960 when construction of the Thruway was almost complete, the Authority, the Department of Public Works, and the Division of the Budget joined in studies and negotiations to effectuate an administrative settlement of the amount due the Authority. Engineers and accountants assigned by each made separate and joint comprehensive studies. There was never a dispute as to whether the Authority was entitled to any credit; rather, the dispute was limited to the amount of the credit. However, no consensus could be reached as to the precise amount involved, and the State Comptroller indicated that any reduction of the Authority’s remaining debt to the State by way of credits would require action by the Legislature or a court of competent jurisdiction.
Thereafter, the Enabling Act (L. 1964, ch. 669) was enacted by the Legislature as submitted by the Attorney-General and the Authority. It reads:
“ Section 1. Jurisdiction is hereby conferred upon the court of claims to hear and determine claims of the New York state thruway authority against the state for expenditures charged to the authority for improvements and additions to the state highway, parkway and canal systems and other state facilities made by, or at the direction or request of, any department or agency of the state for the sole benefit of the state and not required for thruwáy purposes and for lands acquired or used therefor. This section shall not be construed to alter, modify or *519 repeal section three hundred forty-six of the highway law or section three hundred fifty-nine of the public authorities law.
“ | 2. Such jurisdiction shall be exercised in accordance with the provisions of the court of claims act except the provisions in respect of the time of filing claims, but no award shall be made or judgment rendered hereunder against the state unless such claims accrued on or before February twenty-eight, nineteen hundred sixty-four, and are filed with the court of claims within six months from the effective date of this act.
“ § 3. Jurisdiction is hereby conferred upon the court of claims to make awards and render judgments on such claims if the court shall find that such claims or any of them were founded in right and justice or in law or equity against the state and are in right and justice or in law or equity presently payable by the state, and:
“ a. Where the claims are for expenditures for lands solely for the state highway, parkway, or canal systems or other state facilities, such lands were acquired or used for such purposes, by or at the direction or request of a department or agency of the state, were not required for thruway purposes, and the expenditures therefor were charged to the authority; or
“ b. Where the claims are for expenditures for improvements or additions solely to the state highway, parkway or canal systems or other state facilities, such improvements or additions were made for such purposes, by or at the direction or request of a department or agency of the state, were not required for thruway purposes, and the expenditures therefor were charged to the authority.
“ § 4. Upon such findings the state shall be deemed liable for such claims and they shall constitute legal and valid claims against the state and the court of claims shall make such awards and render such judgments therefor as shall be just and equitable.
“ § 5. Any award resulting from such claims must be without interest and shall be applied as a credit upon, and may not exceed, the amount of the balance due under the advances made by the state for thruway purposes.
“ § 6. This act shall take* effect immediately.” (Emphasis supplied.)
*520 The State strenuously contends that all of the claimed improvements are part of the Thruway and were constructed for the benefit of the Thruway. It would follow from this premise that the entire claim must be disallowed. This contention, if accepted, therefore, would make passage of the Enabling Act a nullity for jurisdiction would have been conferred upon the Court of Claims, in effect, to determine nothing.
We conclude that the Legislature, in enacting the Enabling Act, approved the understanding between the State and the Authority to apportion costs and recognized it as constituting a moral obligation on the part of the State. That the Legislature possessed the power to do so is beyond dispute. (Cf. Williamsburg Sav. Bank v. State of New York, 243 N. Y. 231; cf. Board of Supervisors of Cayuga County v. State of New York, 153 N. Y. 279; cf. O’Hara v. State of New York, 112 N. Y. 146, 151-152.) The statutory pattern supports this conclusion because the Authority possessed the power to determine the dimensions, type and number of grade crossing structures and to disapprove State-drawn plans. Also, the applicable statutes limited the Authority’s indebtedness to the State to the cost of Thruway improvements, necessary Thruway construction, and to land acquired or used for such purpose.
The only dispute involved was the correct apportionment of costs between what was built and what construction was necessary to relocate and restore disrupted State highways and facilities. It is inconceivable that the Legislature was unaware of the principal elements of the claim and the history of this dispute. The Authority’s memorandum to the Legislature in support of the Enabling Act relates the history of the dispute and explains that the act would confer jurisdiction on the Court of Claims ‘ * to determine how much of such improvements should be paid for by the State and how much by the Authority.” The contested language “ for the sole benefit of the state and not required for thruway purposes ” can, therefore, only relate to that portion of the cost of construction of the Thruway which was for the “ sole benefit of the state and not required for thruway purposes ’ ’. It follows that the determination of what was built and what construction was necessary to relocate and restore disrupted highways and facilities is a question of fact affirmed *521 by the Appellate Division. The record clearly supports these determinations of “ sole benefit ”.
Likewise, the evidence clearly supports the affirmed findings of fact that the Authority paid the amounts allowed by the courts below at the direction or request of the State pursuant to an agreement for reimbursement and that no determinations concerning the dimensions of necessary and adequate grade crossing structures were made by the Authority or by the Superintendent of Public Works.
Nor is the qualifying language in the Enabling Act that the act would not “ alter, modify or repeal section three hundred forty-six of the highway law or section three hundred fifty-nine of the public authorities law ” fatal to those portions of the claim relating to grade crossing structures.
Section 346 of the Highway Law, under which the Department of Public Works designed and constructed a small segment of the Thruway as part of the State highway system prior to 1950, provided: ‘ ‘ Highway and railroad grade crossings shall be
eliminated generally by structures to be determined by the superintendent of public works * * * The entire cost of such structures as so determined by the superintendent of public works shall be included in the cost of the thruway. ’ ’
Similarly, section 359 (subd. 3) of the Public Authorities Law, which controls construction subsequent to creation of the Thruway Authority, states: ‘ [1] Highway and railroad grade crossings shall in general be separated by structures to be determined by the authority * * * The cost of all such structures, except such part as is otherwise payable, shall be borne by the authority.”
The claim for grade crossing structures constitutes the major portion of the Authority’s claim. Both of the above sections placed the duty of eliminating highway and railroad grade crossings on the Thruway builders because it was essential that there be no crossing at grade.
We accept the trial court’s conclusion that this limiting language preserving sections 346 and 359 was inserted in the Enabling Act as a precautionary measure to recognize the Authority’s liability for the legitimate costs of grade separation structures for Thruway purposes. There was a legitimate dispute at the time the Enabling Act was passed as to whether *522 determinations had been made by the Authority or the Superintendent of Public Works concerning the dimensions and types of structures necessary to eliminate grade crossings. If these determinations had been made, sections 346 and 359 would seem to require that the entire cost of construction of such structures be borne by the Authority, because it was obligated by these sections to construct structures determined to be adequate. The qualifying language, therefore, prevented any portion of a structure determined adequate by the parties pursuant to section 346 of the Highway Law or section 359 of the Public Authorities Law from being considered by the Court of Claims as being “ for the sole benefit of the state ”. In other words, the qualifying language prevented the Court of Claims from substituting its judgment for that of the parties involved wherever determinations of adequate size had been made pursuant to sections 346 and 359.
This seems to be the only construction consistent with the nature and history of the dispute. It would be anomalous, to say the least, to construe the limiting language in the light of “ reason, justice and equity ” (L. 1964, ch. 669, § 3) as barring a claim for the excessive dimensions of grade crossing structures found to be for the sole benefit of the State and made at the request of the State pursuant to a promise of reimbursement.
However, the State’s argument that the Authority’s claim for construction of a structure to carry the proposed Palisades Interstate Parkway over the Thruway must be disallowed is well taken. $1,397,054 was spent by the Authority at State request for construction of the bridge, ramps and grading pursuant to an understanding of later reimbursement at an accounting. The Palisades Parkway was in the planning and design stages at the time of this construction and had not been physically constructed across the route of the Thruway. However, the Palisades Interstate Parkway Commission had acquired the land necessary for construction of the Parkway in the area of the Thruway interchange prior to the design of the Thruway.
Our decision that the qualifying language in the Enabling Act preserving section 359 of the Public Authorities Law emphasized the liability of the Authority for the legitimate costs of grade separation structures requires disallowance of this item of the claim. Subdivision 3 of section 359 requires that “ High *523 way * * * crossings shall in general be separated by structures * * * The cost of all such structures, except such part as is otherwise payable, shall be borne by the authority.” The language * ‘ Highway * * * crossings shall in general be separated by structures ” is sufficiently broad to encompass proposed intersecting parkways for which land had been acquired in the path of the Thruway prior to design of the Thruway. The Authority was, therefore, obligated to construct a structure adequate to separate the grades of the Thruway and Palisades Interstate Parkway. It follows that the cost of a structure adequate to bridge the Parkway cannot be considered made for the “ sole benefit of the state and not required for thruway purposes ”. We do not understand the Authority to argue that the Palisades Parkway grade crossing structure was constructed larger than required by then current engineering criteria for the proposed parkway. Also, the ramps constructed at this intersection cannot be said to be for the ‘ ‘ sole benefit ’ ’ of the State for they were required for traffic entering and leaving the Thruway at this point. The grading, of course, was necessary for construction of the bridge and ramps and, accordingly, must similarly be disallowed.
A related problem is posed by expenses incurred in 1953 in producing plans and specifications for two structures to carry the proposed extension of the Taconic State Parkway across the Berkshire section of the Thruway. As to this item, there is no showing in the record that land had been acquired for the proposed extension in the area of the potential intersection with the Thruway or even that actual construction of the proposed extension in the path of the Thruway had been agreed upon. Even at the time of trial, 13 years later, the proposed extension of the Taconic State Parkway had not been constructed across the Thruway. As the State concedes it its reply brief, this was a “potential” intersection. In short, the “potential” intersection was uncertain and speculative.
For this reason, the qualifying language in the Enabling Act preserving section 359 of the Public Authorities Law does not include this item of the claim within the Authority’s obligation to bridge intersecting highways. The record supports the affirmed findings below that the Authority paid for these plans at State request11 for the sole benefit of the state ’ ’ pursuant to *524 an understanding for later reimbursement at an accounting. Accordingly, this item of the claim was properly allowed.
An examination of the Referees’ report reveals that substantial credits were allowed the Authority for the depreciated value of pavement necessarily replaced by the Authority in eliminating grade crossings. Briefly, the Referees first determined the cost of replacing the original pavement by percentage formulae (width of the original pavement/width of replacement pavement) from the cost of the pavement actually laid. The replacement cost of the original pavement thus determined was depreciated based upon a finding of a 20-year service life for highway pavement. The amount of this depreciation was allowed as a credit to offset the Authority’s debt to the State.
Initially, it must be noted that the Authority has been awarded the entire cost of that portion of the new pavement which exceeds the width of the original pavement and that portion which exceeds the length of pavement required to adequately eliminate grade crossings.[5] Thus, the pavement which has been depreciated consists only of that pavement which would have necessarily been replaced in adequately eliminating grade crossings.
The Authority relies upon a 1951 opinion of the Attorney-General (1951 Opns. Atty.-Gen. 139-142) dealing with the right of private utility companies to reimbursement for the full cost of relocating utility lines disturbed by construction of the Thruway. Section 346 of the Highway Law and section 359 (subd. 3) of the Public Authorities Law required that the expense of relocation be borne by the Authority and deemed part of the cost of the Thruway. The Attorney-General reasoned that the relocation of existing utility lines represented an appropriation by the State of the original lines which entitled the owners to just compensation. Just compensation was determined by the law of eminent domain to be “ payment by the State of the cost of reproduction in kind of the property taken, less depreciation (Matter of City of New York, 198 N. Y. 84, 87).” In other words, the Authority was.allowed a credit for the depreciated value of the relocated utility lines.
The private utility analogy is inapplicable to the Authority’s claim for the depreciated value of State highways for two rea *525 sons. First, a road is built and maintained for the public benefit. It brings no cash return from which the governmental unit which builds and maintains it can recoup its depreciated value. However, private utilities recover the depreciated value of their facilities through their rates. The private utility would in effect receive double recovery to the extent it has recouped the depreciated value of its assets if it were allowed to recover the full replacement cost of its appropriated facilities in eminent domain proceedings. On the other hand, this element of double recovery is not presented in the appropriation of governmental property. In the more analogous situation of appropriation of streets and highways of governmental units, the proper measure of damages is “ the cost of adequate substitute facilities * * * whether such sum be more or less than the value of the street and facilities taken. ’ ’ (City of Fort Worth, Texas v. United States, 188 F. 2d 217, 223 [5th Cir., 1951]; cf. United States v. City of New York, 168 F. 2d 387, 390 [2d Cir., 1948]; cf. City of Little Falls v. State of New York, 198 App. Div. 488.)
Second, the private utility analogy is inappropriate because the issue raised is whether the depreciated value of State highways should be allowable as a credit to the Authority within the Enabling Act’s formula of “ for the sole benefit of the state and not required for thruway purposes ”= The State has received new pavement for the original pavement, and in this sense the State has received a betterment. However, it is obvious that the Authority could not construct adequate bridges for intersecting highways or otherwise eliminate grade crossings without replacing the original pavement torn up with new pavement of equal width. The new pavement utilized in constructing an adequate replacement highway, therefore, could not be considered to be ‘[1] for the sole benefit of the state and not required for thruway purposes ” since the Authority was obligated by section 359 (subd. 3) of the Public Authorities Law to construct adequate bridges or otherwise eliminate grade crossings with existing intersecting highways. In fact, the Authority concedes its obligation to construct adequate structures to separate grades. The Authority cannot recover the depreciated value of the original pavement replaced merely because the pavement was widened. In each case, the Authority was obligated to construct an adequate replacement highway and, therefore, that portion *526 of the new pavement which merely replaces that portion of the old pavement which the Authority was required to replace in eliminating grade crossings cannot be considered an improvement “ for the sole benefit of the state ” and must be excluded from the claim.
We have examined the merits of the State’s other contentions and find them to be without substance.
Accordingly, the order appealed from should be modified to eliminate the credits for the depreciated value of the original highway pavement necessarily replaced in eliminating grade crossings and to disallow the credit for construction of the grade crossing structure, ramps and grading at the intersection of the Palisades Interstate Parkway with the Thruway. In all other respects, the order should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.

. Hon. F. Walter Bliss, former Associate Justice, Appellate Division, Third Department; General Thomas F. Farrell, former Chief Engineer, State of New York; Commander Charles M. Noble, former Chief Engineer for the New Jersey Turnpike.

. The claim is allowable only as an offset to moneys advanced by the State. (L. 1964, ch. 669, § 5.) Interest has been demanded by the State on these advances and the questions raised are the subject of another action. (New York State Thruway Auth. v. Hurd, 54 Misc 2d 1057.)

. Section 357 (subd. 2) of the Public Authorities Law was amended effective April 7, 1954 (L. 1954, ch. 517, § 2) to expand the Authority’s indebtedness upon assuming jurisdiction to include the “ cost of construction by the state of that portion of the thruway so assumed.” Subdivision 1 of section 359 of the Public Authorities Law was amended (by L. 1951, ch. 776, § 7) to require the Authority upon assuming jurisdiction to reimburse the State for the cost of land acquired by the State for the section of the Thruway assumed. Section 358 of the Public Authorities Law fixed the obligation of the Authority to pay for additional land it requested the State Superintendent of Public Works to acquire for its use.

. A second issue of approximately $500,000,000 was later authorized and sold (L. 1954, ch. 516). This second issue was not guaranteed by the State, but the bonds were made a prior lien on the net revenues of the Authority.

. With the possible exception of Route 332 which was relocated for the sole benefit of the State. However, the Authority only claimed credits for pavement restoration and for the additional width at this site.