**UNITED STATES of America,**
**Plaintiff,**

v.

**STREETS, ALLEYS AND PUBLIC WAYS**
**IN the VILLAGE OF STOUTSVILLE,**
**MISSOURI, etc., et al., Defendants.**

**No. N72C 52.**

United States District Court,
E. D. Missouri, E. D.

March 31, 1975.

Daniel Barlett, Jr., U. S. Atty., St. Louis, Mo., for plaintiff.

Jerome W. Seigfreid, Mexico, Mo., for defendants.

## OPINION

NANGLE, District Judge.

On November 28, 1972, this action was commenced by the United States of America to acquire under power of eminent domain certain described streets, alleys, and public ways in the Village of Stoutsville, Monroe County, Missouri. Those joined as defendants having an interest in the subject property to be vacated are the Trustees of the Village of Stoutsville, the Trustees of the Stoutsville Public Cemetery, and the Supervisor of the Monroe County Highway Department. The subject property was taken in conjunction with the construction of the Clarence Cannon Dam and Reservoir in Northeastern Missouri. On May 29, 1974, the complaint was amended to vacate additional right-of-way necessary to the plaintiff's plan of providing substitute facilities for the benefit of the Village of Stoutsville.

In consideration for the subject vacation, the United States of America proposes to construct those substitute roadway facilities which are necessary to the defendants. By their answer defendants seek substantial damages as just compensation. The issue raised is whether defendants are entitled to compensatory damages or to presently necessary substitute facilities as just compensation for the taking of the subject property. On October 17, 1973, the Court ordered the action submitted for ruling on the briefs of the parties.

The Court will take as admitted those uncontroverted facts stated in the pleadings and in the parties' briefs.

The United States of America has acquired land which will be flooded by the Clarence Cannon Dam and Reservoir, including a part of the Village of Stoutsville. However, the defendants have refused to vacate the streets, alleys, and public ways located in the areas being acquired for the dam and reservoir project.

Stoutsville did not own a fee interest in the streets, alleys, and public ways situated within the city limits. The original dedication provided only a public easement. Stoutsville's only interest was to maintain the property for public use. The majority of the residents and all of the businesses have moved out of the town as a result of the dam project. There is presently no necessity or duty upon the town to replace all of the public ways taken in this action.

An examination of diagram Exhibit B–1, attached to the amended complaint, shows that, aside from intra-city access unaffected by the subject acquisition, Stoutsville requires access to State Highway 24 north of Stoutsville, access to the cemetery situated to the south, access to County Roads 603 and 464 to the south, and access to State Highway 107.

As substitute roadway facilities, the United States of America will provide access to those tracts of land which will not be acquired and which remain to be acquired within the area to be inundated. The plans for these access provisions are set out in Appendices A (Exhibit C attached to the United States of America's Memorandum in Support of Motion for Order for Delivery of Possession filed November 28, 1972), B and C (Exhibits A1 and B1, respectively, attached to the amended complaint) to this opinion. The United States of America plans to assume the cost of all improvements and new construction of the access roads. Facilities owned by public utility service companies will be relocated by contracts with the United States of America at a later date with a minimum of interruption to the service. The United States of America does not contemplate depositing any funds into the registry of the Court.

The defendants assert that the Village of Stoutsville is entitled to monetary compensation for this taking of twenty blocks (1.6 miles) of gravel streets sixty-six feet wide, and thirty-three hundred feet of alleys. The amount of such damages is claimed to be the cost of reconstructing roadway facilities equivalent to those acquired in this action.

■ The general rule in this Circuit for determining the just compensation due to a governmental entity for federal acquisition by power of eminent domain of public roadways, when after the acquisition the remaining roadways are inadequate to the present needs of the governmental entity, is the cost of supplying such substitute as is presently needed. United States v. Des Moines County, Iowa, 148 F.2d 448, 449 (8th Cir. 1945), cert. den., 326 U.S. 743, 66 S. Ct. 56, 90 L.Ed. 444 (1945); 4A Nichols on Eminent Domain, pp. 15–13–15–14, § 15.2 (3rd ed.).

Defendants argue that Stoutsville lost most of its population (and thereby its present need for reconstruction of all of the roadways taken) as a result of the dam and reservoir project, and that the city plans to redevelop (and thereby develop a need for more roadways in the future). The city argues, therefore, that the United States of America should not be allowed to avoid paying compensation for property taken because it was the cause of the reduction of the city's present need for roadway facilities.

The defendants' argument understates a cardinal premise, i. e. the city as a governmental entity is not organized to make a profit in its operation, but to supply the public needs of its citizens. United States v. City of New York, 168 F.2d 387, 390 (2nd Cir. 1948). The Court in *City of New York* stated:

The true measure of compensation when a municipality's streets are condemned is the cost of providing any necessary substitute. When no substitute facilities are necessary, it follows that no compensation is allowed. The rational is clear. If the municipality has not had to provide substitutes, then it has suffered no financial loss and hence is not entitled to substantial damages. *Indeed, the taking relieves it of the burden of maintaining such roads.* It is in the business not of making profits, but of supplying public needs; and neither original cost nor reproduction cost of a street

affords any real measure of the City's burden in taking care of these needs when a relocation of facilities becomes necessary. (citations omitted) (emphasis added).

168 F.2d *at* 389–390. The United States of America is not required to fund the city for the expected public roadway needs of future citizens. Those citizens, both those who left and those who remain, who were individually injured by the government's taking are entitled to just compensation. U.S.Const., Amend. V. It is not their right to just compensation that is herein being litigated, but that of the governmental entity that is obligated to serve the public needs of those citizens who remain. The defendants' reliance upon Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973), is to no avail. That case involved the measure of damages due as just compensation for the taking of private property—not the public property of a governmental entity.

■ The United States of America has proffered its plan to provide the required substitute facilities at its own expense, thereby obviating the need to pay damages. United States v. Certain Lands, 246 F.2d 823, 824 (3rd Cir. 1957); Jefferson County, Tennessee v. Tennessee Valley Authority, 146 F.2d 564 (6th Cir. 1945), cert. den., 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1945), reh. den., 324 U.S. 891, 65 S.Ct. 1024, 89 L.Ed. 1438 (1945). The defendants have not specifically asserted that the plan of providing substitute facilities by the United States of America does not constitute adequate substitution of necessary roadway facilities. Therefore, the Court will order that the United States of America proceed according to the plan set out in Appendices A, B, and C to this opinion, while retaining jurisdiction to litigate the adequacy of the plan. The United States of America will be ordered to advise the Court by written report filed every four calendar months of the status of the implementation of its plan until completion thereof.

APPENDIX A

[EXHIBIT "C"]

DEPARTMENT OF THE ARMY
St. Louis District, Corps of Engineers
210 North 12th Street
St. Louis, Missouri  63101

[SEAL]

In reply refer to

LMSED–PJ                                   2 November 1972

SUBJECT: Clarence Cannon Dam and Resorvoir Project, Salt River, Missouri, Vacation and Alteration of Streets and Alleys in the Village of Stoutsville

Division Engineer, Lower Mississippi Valley
ATTN: LMVED–T

1. Reference is made to letter report, LMSED–PJ, 18 July 1972, subject: Clarence Cannon Dam and Reservoir, Salt River, Missouri, Vacation and Alteration of Streets and Alleys in the Village of Stoutsville, in which approval was requested to negotiate a contract with the Village of Stoutsville, and subsequent approval granted on 9 August 1972 by LMVED–TD in the 1st Indorsement to referenced letter.

2. Negotiations with the village concurrently have reached an impasse; and the request to initiate condemnation proceedings are being submitted by this District to vacate and/or alter the streets and alleys within the limits of the village. Bids for the Norfolk and Western Railroad relocation have been opened, and award has been delayed pending completion of these condemnation proceedings. The purpose of this letter report is to present the engineering requirements in relation to the condemnation procedures.

3. Provisions for alteration of the affected streets and alleys were not included in either the Survey Report or General Design Memorandum. The authority to vacate these affected streets and alleys was contained in above-referenced 1st Indorsement. It was anticipated that only vacation of streets and alleys would be necessary, with the exception of the access to the Stoutsville Cemetery and the alteration of the intersection of County Roads 464 and 603, which are to be incorporated into the applicable Cemetery and County Road Relocation Design Memorandums scheduled for submittal in July and November 1973, respectively. However, the relocation of the Norfolk and Western Railroad has necessitated the need for another alteration. to provide access to the residences remaining north of the relocated railroad.

4. The Village of Stoutsville is located on the North Fork Salt River adjacent to State Highway 24 (see Inclosure 1). The village will be affected by the operation of the reservoir, as well as the relocation of the Norfolk and Western Railroad, also required as a result of the project. The normal pool elevation is 606.0. The flood control pool elevation is 638.0, and adding 4.0 feet for wave heights, increases the project taking requirements to elevation 642.0.

5. Requirements for the project will eliminate access through the village, access to the group of residences remaining immediately north of the relocated railroad right-of-way, access to the Stoutsville Cemetery, and access to the tracts which will remain in the southeast portion of the village. The tracts which will remain in the southern portion of the village were annexed subsequent to submission of the General Design Memorandum and Real Estate Memorandum for this project.

6. The present access to the group of residences which will remain immediately north of the proposed relocated railroad is south from State Highway 24 on Walnut Street, east on Hill Street, and north on Priest Street. Pollard Street, between Walnut and Church Streets, has been in disuse for some time, and is presently impassable. The intersection of Pollard and Walnut Streets is also below the guide taking contour, elevation 642.0 feet mean sea level. The Government will construct, or have constructed, an alteration at the intersection of Pollard and Walnut Streets to allow access to residents remaining north of the relocated railroad (see Inclosures 1 and 2). In addition to this construction, the Government proposed to improve Pollard Street with a new surface to conform with dimensions of the entrance alterations. This alteration will be constructed to provide a 28-foot roadway width with 6-inch-thick graveled 20-foot travelway

width, and 4-foot earth shoulders, with such drains as are necessary. It is recognized that the altered Pollard Street entrance provided by the railroad relocation contract may be subject to consolidation of the embankment, settlement of the foundation, possibilities of slides in the embankment or slope, possible failures in the foundation, and development of other structural conditions. It is, therefore, recognized that because of such conditions, it may be necessary to defer beyond the period of scheduled construction work required to complete the altered facilities. The Government, therefore, will pay for the additional actual cost and expense of work required above ordinary maintenance in remedy of or in prevention of all conditions described above during the 2-year period beginning on the date altered street is placed in use. The estimated cost of the alterations and improvements is $15,600.

7. The present access to the Stoutsville Cemetery is east from County Road 603 (see Inclosure 1). This access will be inundated upon project completion. The new access will be constructed from the east side of the cemetery southeast to County Road 464 (see Inclosures 1 and 3) as approved in the General Design Memorandum, paragraph 15–04, County Roads, and designated as C–38A. This access road will also provide access to the remainder of tract 1582. The exact location and details of the proposed access will be presented in the Cemetery Design Memorandum for final approval. The estimated cost of constructing the new access road to the cemetery is $13,600.

8. The existing access to the remainder of tracts 1166E, 1167, and 1128, southeast of the village, is by way of County Road 464 east to State Highway 107, or through the village from State Highway 24, then south on County Road 603. The relocated access will be provided on the existing County Road 464 to State Highway 107 for the three ownerships of the tracts by modifying County Road 464 as necessary to accommodate a 28-foot-wide roadway with a 20-foot 6-inch-thick graveled travelway and 4-foot earth shoulders. This modification will be constructed by a raise in elevation to avoid flooding by operation of the reservoir. The intersection of County Roads 464 and 603 will be modified to the same elevation (see Inclosures 1 and 4). This alteration was approved in the General Design Memorandum, paragraph 15–04, County Roads, and designated as C–38. The exact details of the relocated access will be presented in the County Road Relocation Design Memorandum. The estimated cost of the relocated access is $82,900.

9. All road relocations or alterations will be based on design standards, as established by the Missouri State Highway Department, and will consist of a 28-foot roadway width with a 6-inch-thick graveled 20-foot-wide surface width and 4-foot earth shoulders (see Typical Section on Inclosure 2).

10. All affected dedicated streets and alleys within the corporate limits of Stoutsville inside project limits will be vacated by appropriate legal procedures.

11. A temporary crossing will be required over the relocated railroad right-of-way until the relocation is completed to allow access to the residences remaining south of the relocation that have not been acquired as yet or that have been leased back to the previous owner. The temporary crossing will be provided at Church Street where the difference in existing and finished grade is only approximately 5 feet. There is an existing rural post office south of the railroad relocation and within acquisition limits which the Stoutsville residents prefer to remain open as long as possible. Access to the existing Continental Telephone Service Exchange Building will also be required until the building can be relocated north of the railroad right-of-way. The initiation of contracts to be made with the various utility service companies is scheduled for November 1973. Temporary access across the Norfolk and Western Railroad right-of-way must be maintained until the contract with Continental Telephone Company is executed, their existing services have been relocated, and residents south of the right-of-way in the original village have vacated possession of their land.

12. The alteration of Pollard and Walnut Streets, and the temporary crossing, were included in the railroad relocation contract which was advertised in September 1972, since the access will be eliminated by construction of the railroad relocation. The alteration of Pollard and Walnut Streets will be made the first order of work in the contract for the relocated railroad, since this is the more economical method of providing this access rather than letting a minor separate contract for this work.

13. Approval of the recommendations made in this report on relocations, alterations, and vacations is requested concurrently with submission of condemnation proceedings to which this report will be attached. An attorney's report is inclosed for your information (Inclosure 5).

FOR THE DISTRICT ENGINEER:

5 Incl                           /s/ MILTON MINDEL
as                               Chief, Engineering Division

APPENDIX B

[EXHIBIT "A–1"]

CLARENCE CANNON DAM & RESERVOIR

SALT RIVER, MISSOURI

Part of Walnut Street and                          18 January 1974
Pollard Street Vacation        0.15 Acre      Monroe County, Missouri

A tract of land situated in the County of Monroe, State of Missouri, being all that part of Walnut Street and Pollard Street, in the Town of Stoutsville, Missouri, lying northerly of the southwesterly prolonga-

tion of the south line of Pollard Street, as platted, and lying southerly of the southern curved right-of-way line of relocated Pollard Street from P.C. Station 1 + 94.0 to P.T. Station 4 + 67.3 as shown on U. S. Army Engineer Drawing S–CC 70/10A, being part of the northeast quarter of section 13, township 55 north, range 9 west of the 5th principal meridian, containing 0.15 acre, more or less.

APPENDIX "C"
[EXHIBIT "B–1"]