**STATE OF CALIFORNIA et al.,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21291.**

United States Court of Appeals
Ninth Circuit.

May 22, 1968.

Miriam E. Wolff (argued), Deputy Atty. Gen., Thomas C. Lynch, Atty. Gen., San Francisco, Cal., for appellant.

Edmund B. Clark (argued), Roger P. Marquis, Attys., Dept. of Justice, Washington, D.C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., J. Harold Weise, Asst. U. S. Atty., Lands Division, San Francisco, Cal., for appellee.

Before BARNES, HAMLIN and BROWNING, Circuit Judges.

BROWNING, Circuit Judge:

The United States initiated proceedings to condemn certain lands in the City and County of San Francisco for the expansion of San Francisco Naval Shipyard. The State of California claimed title to part of the lands and sought compensation for their loss. The district court awarded nominal damages. The State appealed.

It is stipulated that all of the condemned lands, including those claimed by the State, were tide or submerged lands which passed to the State upon its admission to the Union in 1850.[1] In 1868 the State authorized the survey and division of the lands into lots and blocks, reserving "so much thereof (as might be required) for streets, docks, piers, slips, canals, drains, or other use necessary for the public convenience and the purposes of commerce." In 1869 the State approved and published a map showing the lots, blocks, and reserved areas. Subsequently the State sold the lots to private parties.

We reviewed this history in some detail in State of California v. United States, 169 F.2d 914 (9th Cir. 1948), and held that under State law the submerged lands marked on the 1869 map as "streets" were dedicated to use as public thoroughfares. We further held that the State was entitled to no compensation for the "streets" involved in that case.

The lands involved in the present appeal, as described on the 1869 map, are as follows. The largest parcel taken constitutes a large "U"-shaped area opening into San Francisco Bay, marked "South Basin," with a 200-foot wide strip, marked "reserved for an open canal," (referred to as the "channel") projecting from "South Basin" into the area platted as blocks and lots, plus two narrower strips on each side of the "channel" marked "Twenty Third Avenue" and "Twenty Fourth Avenue." A smaller parcel of lands taken is located within "India Basin," an area similar to "South Basin," marked "Dedicated to and reserved for Docks, Piers, Slips, and Basins, and other purposes of Commerce." A portion of "India Street," bordering this basin, was also taken.[2]

The parties requested the district court to make a pretrial determination of the standards to be applied in fixing the value of (1) the street segments, and (2) the "basins" and "channel."

---

1. Borax Consolidated, Ltd. v. City of Los Angeles, 296 U.S. 10, 15–16, 56 S.Ct. 23, 80 L.Ed. 9 (1935); Weber v. Board of Harbor Commissioners, 18 Wall. 57, 65, 85 U.S. 57, 65, 21 L.Ed. 798 (1873).

2. The State claims "severance" damages to two other areas as a result of the condemnation. These will be described later.

As to the street segments, the court held that under our decision in State of California v. United States, supra, "the State is entitled to compensation for their taking only to the extent that, as a result of the taking, the State is compelled to construct a substitute." The court concluded that on the undisputed facts the State would not be required to build substitute streets for those condemned.

The court also held that the "substitute facilities" rule was applicable to the "basins" and "channel," under the decision of the Court of Appeals of the Second Circuit in United States v. City of New York, 168 F.2d 387 (1948). However, since the record did not establish whether substitutes would be required for these facilities, the court ordered a trial to determine "the legal necessity to provide substitute facilities for navigation or commerce made necessary as a result of the taking of said Basins and the 'Channel.'" The evidence was to be "limited to the necessity for the substitution of the facilities that existed at the time of taking"; and "not * * * to show a hypothetical utilization of the subject areas in the future development of the Port of San Francisco."

Following entry of this order, the parties filed an agreed statement of facts reciting that at the time of the taking there "were no wharves, docks or other facilities constructed by the State of California" on the condemned lands, and that the State "has not been required to substitute or relocate any of its facilities for navigation or commerce as a result of the taking."

The district court then entered the judgment appealed from, finding the facts as agreed upon, concluding "as a matter of law that there is no legal necessity to provide substitute facilities for navigation or commerce as a result of the taking," and adjudging "that the compensation to be awarded for the taking of said parcels * * * save and except for filled land that may be found within,[3] is nil."

■ The State contends that "The Court erred * * * in concluding the State of California was not entitled to monetary compensation for the taking of its underwater parcels unless and until the State could prove the need for substitute facilities." We agree. We conclude that, though substitute facilities were not required, the State may still have suffered damage which is compensable under the Fifth Amendment. We therefore reverse and remand for further proceedings.

■ We start, as did the district court, with the proposition that the Fifth Amendment protects the property of the State from appropriation by the United States without "just compensation." [4]

3. The exclusion of filled land will be referred to later. We note here, however, that the United States has not appealed, and apparently concedes that the State is entitled to more than nominal compensation for filled land, as distinguished from submerged land, despite dedication to the purposes indicated in the 1869 map.

We also note that some of the submerged land taken lies bayward of the boundary of South Basin shown on the 1869 map and is not subject to the dedication to public purposes evidenced by that map. We understand the United States to concede that the damage to be awarded for the taking of these lands was not determined by the judgment.

Finally, we note that both in the district court and this court the United

States disclaimed reliance upon any "navigation servitude" to justify the denial of compensation. Therefore the applicability of that doctrine, reflected in such cases as United States v. Rands, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967); United States v. Virginia Electric & Power Co., 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961); United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240 (1956); United States v. Commodore Park, Inc., 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017 (1945); and United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063 (1913), is not before us.

4. United States v. Carmack, 329 U.S. 230, 242, 67 S.Ct. 252, 91 L.Ed. 209 (1946); City of St. Louis v. Western Union Tele-

This is true even when the property has been dedicated by the State to public use.[5] Since property belonging to the State of California has been taken, the only issue is the amount of compensation which is "just."

■ We also accept the district court's premise that under California law [6] the land reserved on the 1869 map for "basins" and an "open canal" or "channel" was as effectively dedicated by the State to the purposes indicated as was the land reserved for "streets." The reasons given in State of California v. United States, supra, encompass both; and section 1781 of the California Harbors and Navigation Code expressly provides that "China, Central, *South, India,* and Dry Dock basins * * * *and the canal opening into South Basin,* as far as the ebb and flow of tide in them, are dedicated to public use for the purposes of commerce and navigation." (emphasis added). Finally, we accept the stipulated facts that the State had constructed no facilities on the dedicated lands and has not been required to substitute or relocate facilities for commerce and navigation because of the taking.

But it does not follow that the United States could appropriate these lands without payment. Neither our decision in State of California v. United States, supra, 169 F.2d 914, nor the decision of the Court of Appeals for the Second Circuit in United States v. City of New York, supra, 168 F.2d 387, supports a rule which would permit the United States to take property having provable value to the State without paying for it.

■ The decision in State of California v. United States was premised upon the "well-settled rule that it is the owner's loss, not the taker's gain, which is the measure of the value of the property taken," citing United States ex rel. and for Use of T.V.A. v. Powelson, 319 U.S. 266, 281, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943) and United States v. Causby, 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). 169 F.2d at 923, note 3. Our inquiry was "directed solely to the question of how much the appellant *lost* by being forced to give up these tracts of land * * *" 169 F.2d at 924. We concluded that because the lands dedicated as streets in that case could not be used for any purpose which would bring the State profit, the correct measure of compensation was the cost of providing substitute facilities; and because there was no need for the State to build streets elsewhere to take the place of those condemned,[7] the taking resulted in no loss

---

graph Co., 148 U.S. 92, 101, 13 S.Ct. 485, 37 L.Ed. 380 (1893).

5. 4 Nichols on Eminent Domain § 15(1), at 744–45 (3d ed. 1962). City of St. Louis v. Western Union Telegraph Co., cited n. 4, was such a case. So too, of course, was State of California v. United States, supra, 169 F.2d 926, as well as many, if not most, of the reported cases involving condemnation of State property by the United States.

6. "Though the meaning of 'property' as used * * * in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law." United States ex rel. and for Use of T. V. A. v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390 (1943). See also United States v. Petty Motor Co., 327 U.S. 372, 380–381, 66 S.Ct. 596, 90 L.Ed. 729 (1946); United States v.

Causby, 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); State of California v. United States, supra, 169 F.2d at 917–918.

7. The United States had also taken the lots for which the "streets" were to provide ingress and egress. State of California v. United States, 153 F.2d 558, 559–560 (9th Cir. 1946). As the court said (169 F.2d at 925), "The language in United States v. Certain Parcels of Land, D.C.Md., 54 F.Supp. 667, 671, affirmed sub nom. Mayor and City Council of Baltimore v. United States, supra, (147 F.2d 786 (4th Cir. 1945)) is quite apposite here: 'Unless and until the Federal Government abandons its public use of the property and deeds it back to private owners or to the City, there is no showing of any need for alleys, streets or other ways except such as the Federal Government or its licensees may require.'"

to the State.[8] This was not a holding that absence of need for substitute facilities would alone have justified denial of compensation.

The portion of the decision in United States v. City of New York, supra, 168 F.2d 387, relied upon by the district court sustained an award of nominal damages for the taking of City land underlying certain waterways. The opinion of the trial court in that case discloses that no substitute facilities were rendered necessary by the taking. It also discloses, however, that the lands were subject to easements for navigation, that the United States had "reserved free use of the Basin" in originally ceding the lands to the City, and that there was "no proof to sustain the fixing of more than nominal damages." United States v. 25.4 Acres of Land, 71 F.Supp. 255, 256 (E.D.N.Y. 1947). In affirming, the Court of Appeals wrote, "The City likewise objects to the nominal awards made for its land under water, *but it offers no evidence as to value of the taking*. The waterways involved were subject to easements of the United States for water commerce, and it appears that no substitute waterway facilities were required." 168 F.2d at 391 (emphasis added). In the present case, the district court quoted and relied upon the second sentence to support its holding that no compensation need be paid unless substitute were required for the "basins" and "channel." But it appears from the

preceding sentence that damages would not have been denied merely because substitute facilities were not required if the City had established that the submerged land had value to the City despite the burden of the easements.[9]

■■ The principles controlling the determination of "just compensation" were restated by the Supreme Court in United States v. Virginia Electric & Power Co., 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838 (1961):

The guiding principle of just compensation is reimbursement to the owner for the property interest taken. "He is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236. In many cases this principle can readily be served by the ascertainment of fair market value—"what a willing buyer would pay in cash to a willing seller." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336. See United States v. Commodities Trading Corp., 339 U.S. 121, 123, 70 S.Ct. 547, 94 L.Ed. 707; United States v. Cors, 337 U.S. 325, 333, 69 S.Ct. 1086, 93 L.Ed. 1392. But this is not an absolute standard nor an exclusive method of valuation. See United States v. Commodities Trading Corp., supra, 339 U.S. at 123, 70 S.Ct. at

8. Other decisions denying compensation for the taking of streets and highways rest upon the same determination that by dedication to this use the particular lands had been deprived of value except as thoroughfares, and if there was no need to replace the street or highway, the State sustained no loss from the taking but was benefited by being relieved of the cost of maintaining the lands as thoroughfares. State of Washington v. United States, 214 F.2d 33, 39, 42–44 (9th Cir. 1954); United States v. City of New York, 168 F.2d 387, 389–390 (2d Cir. 1948); Woodville, Okl. v. United States, 152 F.2d 735, 737 (10th Cir. 1946); Mayor and City Council of Baltimore v. United States, 147 F.2d 786, 787, 789–791 (4th Cir. 1945). City & County

of Honolulu v. United States, 188 F.2d 459 (9th Cir. 1951), is explained on this basis in State of Washington, supra, 214 F.2d at 39.

Similarly, an easement on private property may totally destroy the value of the subservient estate, and thus require a denial of compensation to the owner of that estate. United States v. Jones Beach State Parkway Authority, 255 F.2d 329, 332, 333 (2d Cir. 1958).

9. The lands were not considered valueless merely because they were under water. The State has advised us, and the United States does not dispute, that it appears from the record that the award of "$7,538.40 for a parcel which is not in dispute" (168 F.2d at 389) involved submerged lands.

page 549; United States v. Cors, supra, 337 U.S. at 332, 69 S.Ct. at page 1090; United States v. Miller, supra, 317 U.S. at 374–375, 63 S.Ct. at page 280; United States v. Toronto, Hamilton & Buffalo Nav. Co., 338 U.S. 396, 70 S. Ct. 217, 94 L.Ed. 195.

■ The rule requiring the payment of the cost of "substitute facilities" is an application of these principles, not an exception to them. It enables the court or jury to award the amount required as just compensation in situations where market value or other standards of valuation cannot rationally be applied or where their application would not put the owner "in as good a position * * * as if his property had not been taken." [10] It cannot, consistently with the Fifth Amendment, be used to deny an owner compensation when a taking has inflicted loss. We have been cited to no case permitting such a use of the rule, and a suggestion by the United States that it might be so employed was expressly rejected in

United States v. City of Jacksonville, Arkansas, 257 F.2d 330 (8th Cir. 1958).[11]

The district court's ruling limiting the State of California to proof of need for substitute facilities was therefore error. The State was prejudiced if loss from the taking might have been established by other evidence.

■ The State contends that as a matter of law and fact the State retained the right to devote the dedicated lands to profitable uses, and that the State must therefore be compensated for the fair market value of the lands. If the State means that unless the dedication rendered the lands wholly unavailable for any profitable use the State is entitled to receive the fair market value of the lands without regard to the burden of the dedication, we do not agree. "Just compensation" is to be measured by what the State lost by the taking, and, absent a need for substitute facilities, this is the value of the lands in question burdened as they were.[12] The legal effect of the

---

10. See United States v. Certain Land in Borough of Brooklyn, etc., New York, 346 F.2d 690, 694–695 (2d Cir. 1965); United States v. Board of Education of County of Mineral, West Virginia, 253 F.2d 760, 763 (4th Cir. 1958); Town of Clarksville, Virginia v. United States, 198 F.2d 238, 242–245 (4th Cir. 1952); Mayor & City Council of Baltimore v. United States, 147 F.2d 786, 790–791 (4th Cir. 1945); United States v. Wheeler Township, 66 F.2d 977 (8th Cir. 1933). Cf., United States v. State of South Dakota Game, Fish and Parks Dept., 329 F.2d 665, 668 (8th Cir. 1964).

11. The court said (257 F.2d at 333):
It is here argued that the proper measure of damages for the taking of municipally owned easements is nominal damages in the absence of the necessity to substitute * * *. It is true that where a substitute must be acquired or furnished for the property taken the amount of just compensation is usually the amount of the cost thereof. * * *
This is a far cry from holding that the cost of the substitute road is the only measure of damages under all circumstances. As said by us in United States v. State of Arkansas, supra [8 Cir., 164 F.2d 943], the amount awarded must be the "actual money loss which will be occasioned by the condemnation."

12. As the Court said in Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910), "It is true that the mere mode of occupation does not necessarily limit the right of an owner's recovery. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Louisville & Nashville R.R. Co. v. Barber Asphalt Pav. Co., 197 U.S. 430, 435, 25 S.Ct. 466, 49 L.Ed. 819. But the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained?" See also United States v. Douglas, 207 F.2d 381, 383–384 (9th Cir. 1953).
Whatever merit there might be in an argument that this results in a windfall to the condemnor who takes the lands free of the restriction which reduced their value to the owner (4 Nichols on Eminent Domain 232 n. 15 (1962 ed.)), the rationale of the cases denying compensation in "street" cases (note 8) necessarily rejects it.

dedication under the law of the State [13] must first be determined. That question of law resolved, the monetary value, if any, of the loss to the State of the lands so burdened must then be ascertained as an issue of fact.

It may be that the dedication of some of the lands imposed no binding restriction at all upon their transfer or use, or that the uses to which some or all of the lands were restricted were ones profitable to the State, or did not preclude other uses which were profitable.[14] On the other hand, it may appear that the lands taken (particularly those described as "Twenty Third Avenue," "Twenty Fourth Avenue," "India Street," and an "open canal") have been irrevocably dedicated to non-profitable uses, and that therefore the State has suffered no loss from their condemnation.

If it is determined that the dedications did not preclude profitable use of the lands, it may be possible to value the lands to the State by determining the percentage by which their "fair market value" as unencumbered lands was reduced by the restrictions which were imposed upon their use.[15] If not, an estimate of damages may be based upon evidence of all factors bearing upon the net loss to the State, including the capitalization of projected net income.[16]

Whatever standard is used, the equitable principles underlying just compensation require that any profitable uses of the lands which are left open by the dedication must be considered in determining the fact of loss and in calculating its monetary equivalent. They cannot be ignored as too removed in time while giving immediate effect to the burdens of the dedication.[17] We do not mean to

13. Note 6.

14. With respect to the lands in "South Basin" and "India Basin," the State calls attention to a recent aerial photograph of lands designated on the map of 1869 as "China Basin" and "Central Basin" which shows both areas partially filled and built up with what the State asserts to be valuable commercial facilities profitable to the San Francisco Port Authority.

As to the street segments, the State distinguishes the "streets" involved in State of California v. United States, supra, 169 F.2d 194, by pointing to section 3138 of the California Harbors and Navigation Code, which the State contends, permits the State to use streets fronting on navigable waters (as "Twenty Third Avenue," "Twenty Fourth Avenue" and "India Street" would) to load and land merchandise, and authorizes the collection of dockage, wharfage and tolls for such use.

The district court disposed of this contention on the basis of People of State of California v. San Francisco Gas Light Co., 60 Cal. 349 (1882) in which the Supreme Court of California held that the statute authorized collection of tolls only on "streets" which were "thoroughfares," and did not authorize the collection of tolls for use of "streets" which were not being used as thoroughfares, either because they were submerged, or because they were isolated by private

property and approachable only by water. But this decision relates only to the authority of the State to collect tolls for present uses, and not to the value to the State of lands dedicated to future use as thoroughfares based upon the potential, created by the statute, that such use would be profitable.

15. United States v. Jones Beach State Parkway Authority, 255 F.2d 329, 332 (2d Cir. 1958). It would not be material that the State could not sell the lands. Westchester County Park Comm. v. United States, 143 F.2d 688, 692 (2d Cir. 1944). See also United States v. Douglas, 207 F.2d 381, 384 (9th Cir. 1953).

16. United States v. Eden Memorial Park Ass'n, 350 F.2d 933, 935 (9th Cir. 1965); United States v. Brooklyn Union Gas Co., 168 F.2d 391, 395–396 (2d Cir. 1948); Westchester County Park Comm. v. United States, 143 F.2d 688, 692–693 (2d Cir. 1944); 1 Orgel, Valuation Under Eminent Domain §§ 171–174, at 692–695 (2d ed. 1953). Cf., Public Utility District No. 1 of Pend Oreille County v. City of Seattle, 382 F.2d 666, 673 (9th Cir. 1967).

17. It would be anomalous indeed if the United States could successfully assert that the present value of vacant State lands is diminished by the burden imposed by a dedication of the lands to future public uses not yet being served, and at

suggest, however, that the Court or jury may not properly conclude that because the potential net profit from these uses was so limited or its realization so unlikely, the value of the lands at the time of taking was not significantly increased by the existence of these potential profitable uses.[18]

Finally, we reject the contention that the State may be denied any compensation at all simply because the lands were submerged and had not been put to use at the time of the taking.[19] Property is not valueless simply because the owner has not put it to use.[20] The United States paid compensation for the submerged lots which it took from private owners who had purchased them from the State.

The State claims "severance" damage to two additional parcels of land. The United States took only a portion of the "open canal" as marked on the 1869 map. The State claims that the portion not taken was reduced in value because it was "cut off from access to deep water." This may or may not be true. Concededly, "it is required that regard be had to the effect of the appropriation of a part of a single parcel upon the remaining interest of the owner, by taking into account both the benefits which accrue and the depreciation which results to the remainder in its use and value." United States v. Grizzard, 219 U.S. 180, 184, 31 S.Ct. 162, 164, 55 L.Ed. 165 (1911). The State has lost the profit potential, if any, which these lands may have had as part of the "channel." On the other hand, the untaken lands have been relieved of the burdens of the dedi-

cation. These and other relevant factors must be considered in the district court to determine whether the taking resulted in a decrease in the value of the untaken portion of the channel to the State.

The second parcel of "damaged" lands lies adjacent to "South Basin" and the State contends that its value was reduced because it "will be completely cut off from access by the taking." Again, this claim raises factual issues which must be resolved in the district court.

Reversed and remanded.

---

the same time deny the State the benefit of enhancement of present value based upon the potential profitability of those uses on the ground that the lands had not been put to these uses at the time of taking.

18. Cf., Olson v. United States, 292 U.S. 246, 256–257, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); Chicago, Burlington & Quincy R. Rd. Co. v. City of Chicago, 166 U.S. 226, 249–250, 17 S.Ct. 581, 41 L.Ed. 979 (1897); Public Utility District No.

1 of Pend Oreille County v. City of Seattle, 382 F.2d 666, 673 (9th Cir. 1967); City and County of Honolulu v. United States, 188 F.2d 459 (9th Cir. 1951).

19. The exclusion of filled land from the judgment (note 3) suggests that the district court may have thought that the fact that the lands were submerged was in itself sufficient reason for denying compensation.

20. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206 (1878).