**BOARD OF COUNTY SUPERVISORS
OF PRINCE WILLIAM COUNTY,
VIRGINIA, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 90–364L.

United States Court of Federal Claims.

Dec. 18, 1992.

Sharon E. Pandack, Prince William, VA, for plaintiff.

John S. Gregory, Washington, DC, with whom was David O. Vollenweider, III, and Asst. Atty. Gen., Vicki A. O'Meara, Environmental and Natural Resources Div., for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

Plaintiff sought just compensation computed by the fair market value standard for the legislative taking of 16.05 acres of property. Defendant argued that plaintiff was entitled to nominal compensation only.

## I. FACTS

In 1986, Hazel–Peterson Companies purchased undeveloped property in Prince William County, Virginia. At the time of the acquisition, the property encompassed approximately 550 acres and was zoned A–1, Agricultural. This property, which became known as the William Center, is situated near Manassas and adjoins the Manassas Battlefield Park.

Following purchase of the William Center tract, Hazel–Peterson applied to plaintiff, Board of County Supervisors of Prince William County, Virginia (County), requesting that the property be rezoned from A–1 to Planned Mixed Use District (PMD). PMD zoning permits a mixture of commercial, office, and residential uses. Under state law, the County is charged with legislative control of land use in Prince William County through zoning and other land use regulations. Zoning ordinances, by which the County establishes zoning districts, identify the compatible uses of property within each zoned district and are reflected in the County's Master Plan.

As part of its request for rezoning, Hazel–Peterson submitted numerous "voluntary" conditions, or "proffers," to mitigate the impacts of development. As part of the subdivision approval process, the various associated developers also conveyed an aggregate of 16.05 acres of land to the County in fee simple for public streets, in addition to various easements for site distance, stormwater management, flood plains, and a trail.[1] The County accepted the plats and deeds of dedication for public streets and easements and recorded them per section 15.1–478 of the Virginia Code. On November 18, 1986, the County granted Hazel–Peterson's request, and the land was rezoned PMD to permit development of an integrated business and residential community. The proffers were incorporated into an amendment to the zoning ordinance.

In opposition to the proposed development, a grassroots "Save the Battlefield"

---

1. Plaintiff originally asked for just compensation for road rights-of-way and the easements. At the start of trial plaintiff withdrew its claims for just compensation for the taking of the easements.

coalition formed to preserve the land surrounding the Manassas Battlefield site. On November 10, 1988, the United States Congress, largely in response to the coalition movement, enacted the Manassas National Battlefield Park Amendments of 1988 which, through its power of federal eminent domain, effected a legislative taking of property in Manassas, Virginia, which included the Williams Center tract. The Act vested in the United States all right, title and interest in, and the right to immediate possession of approximately 550 acres of land as an addition to the Manassas Battlefield National Park. To reimburse property owners effected by the legislative taking, the Act provided for payment of just compensation as mandated by the Fifth Amendment to the Constitution of the United States.

In the two years that elapsed between the November 18, 1986, rezoning and the November 10, 1988, taking, Hazel–Peterson began development of the commercial and residential projects. At the time of the taking, construction consisted of incomplete sewer and water improvements, housing lots in various stages of completion, and partially finished roadways. Approximately $8.5 million had been spent in the furtherance of development at the time of the taking.

Plaintiff initiated this suit on April 27, 1990, claiming entitlement to just compensation to be determined by the fair market value process for the 12.95 [2] acres it received in fee, and the proffers. Defendant moved for partial dismissal of plaintiff's complaint as it related to the proffers. This court granted defendant's motion, see *Board of County Supervisors v. United States*, 23 Cl.Ct. 205 (1991), leaving as the sole remaining issue the appropriate measure of compensation for the land conveyed to the County.

## II. DISCUSSION

### A. *"Just Compensation" under the Fifth Amendment*

The Fifth Amendment requires that the United States pay "just compensation" whenever it takes private property for public use. *United States v. 50 Acres of Land*, 469 U.S. 24, 25, 105 S.Ct. 451, 452, 83 L.Ed.2d 376 (1984). "Private property" may be construed as encompassing the property of state and local governments when it is condemned by the United States. *Id.* at 31, 105 S.Ct. at 455. "Under this construction, the same principles of just compensation presumptively apply to both private and public condemnees." *Id.*

The guiding principle in determining just compensation is reimbursement to the owner for the value of the property interest taken. *California v. United States*, 395 F.2d 261, 265 (9th Cir.1968). The owner is "entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole, but is not entitled to more." *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934); *accord United States v. 564.54 Acres of Land*, 441 U.S. 506, 510, 99 S.Ct. 1854, 1856, 60 L.Ed.2d 435 (1979). "[T]he question is what has the owner lost, not what has the taker gained." *Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910); *accord United States v. Virginia Elec. & Power Co.*, 365 U.S. 624, 635, 81 S.Ct. 784, 791, 5 L.Ed.2d 838 (1961).

### B. *Fair Market Value v. Substitute Facilities Doctrine*

At trial, plaintiff argued that it held a fee simple interest in the street rights of way, and therefore was entitled to the same compensation as the adjoining private property owners; the fair market value of the adjoining property. Defendant countered that when fair market value is speculative or too difficult to determine, as is the case with roads, the court should apply the substitute facilities measure of compensation. Defendant interpreted this rule to mean that because the County was not legally or factually obligated to replace the streets, it was entitled to only nominal compensation as a matter of law. However,

---

**2.** Plaintiff subsequently amended its complaint to include the entire 16.05 acres it received.

the court finds that both arguments are flawed.

The Supreme Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking, i.e., what a willing buyer would pay in cash to a willing seller. *See United States v. 50 Acres of Land,* 469 U.S. 24, 29, 105 S.Ct. 451, 454, 83 L.Ed.2d 376 (1984); *United States v. Virginia Elec. & Power Co.,* 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5 L.Ed.2d 838 (1961); *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123, 70 S.Ct. 547, 549, 94 L.Ed. 707 (1950); *United States v. Cors,* 337 U.S. 325, 332–33, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392 (1949); *United States v. Miller,* 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943). "Deviation from this measure of just compensation has been required only 'when market value has been too difficult to find, or when its application would result in manifest injustice to owner or public.'" *50 Acres of Land,* 469 U.S. at 29, 105 S.Ct. at 454 (quoting *Commodities,* 339 U.S. at 123, 70 S.Ct. at 549); *see also Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 10 n. 14, 104 S.Ct. 2187, 2194 n. 14, 81 L.Ed.2d 1 (1984).

The instances in which market value is too difficult to determine generally "involve properties that are seldom, if ever, sold in the open market. Under those circumstances, 'we cannot predict whether the prices previously paid, assuming there have been prior sales, would be repeated in a sale of the condemned property.'" *50 Acres of Land,* 469 U.S. at 30, 105 S.Ct. at 455 (footnote omitted) (quoting *United States v. 564.54 Acres of Land,* 441 U.S. 506, 513, 99 S.Ct. 1854, 1858, 60 L.Ed.2d 435 (1979)). When this is the case, it is said that there is "no market" for the property in question. *United States v. Toronto, Hamilton & Buffalo Navigation Co.,* 338 U.S. 396, 402, 70 S.Ct. 217, 221, 94 L.Ed. 195 (1949); *Fordyce v. United States,* 7 Cl.Ct. 591, 598 (1985). This might be the case with respect to public facilities such as roads or sewers. *50 Acres of Land,* 469 U.S. at 30 n. 12, 105 S.Ct. at 455 n. 12; *564.54 Acres of Land,* 441 U.S. at 513, 99 S.Ct. at 1858; *Fordyce,* 7 Cl.Ct. at 599.

Generally, courts apply the "substitute facilities" standard to determine just compensation for streets, sewers or other public facilities for which fair market value cannot be determined accurately. *United States v. 50 Acres of Land,* 706 F.2d 1356, 1359 (5th Cir.1983), *rev'd on other grounds,* 469 U.S. 24, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984); *see, e.g., United States v. Streets, Alleys and Public Ways,* 531 F.2d 882 (8th Cir.1976); *County of Sarpy v. United States,* 181 Ct.Cl. 666, 386 F.2d 453 (1967); *Town of Clarksville v. United States,* 198 F.2d 238 (4th Cir.1952), *cert. denied,* 344 U.S. 927, 73 S.Ct. 495, 97 L.Ed. 714 (1953). When no substitute facility is necessary, fair market value is the standard for compensation when it can be determined. *50 Acres of Land,* 706 F.2d at 1359; *see, e.g., United States v. 3,727.91 Acres of Land,* 563 F.2d 357, 359–61 (8th Cir.1977); *United States v. Certain Property in Manhattan,* 403 F.2d 800, 803–04 (2d Cir.1968); *California v. United States,* 395 F.2d 261, 266 (9th Cir.1968). "Often ... only nominal damages are justified where streets, highways and the like need not be replaced." *50 Acres of Land,* 706 F.2d at 1359. However, the fact that substitute facilities are not required does not in itself compel an award of only nominal compensation. *3,727.91 Acres of Land,* 563 F.2d at 359–60; *California,* 395 F.2d at 263, 265.

The fundamental principle is that when street rights of way are condemned, the public entity "must be awarded the 'actual money loss which will be occasioned by the condemnation....'" This amount is usually the cost of constructing substitute roads." *United States v. City of Jacksonville,* 257 F.2d 330, 333 (8th Cir.1958) (quoting *United States v. Arkansas,* 164 F.2d 943, 944 (8th Cir.1947)); *see also 3,727.91 Acres of Land,* 563 F.2d at 360 n. 3. However, this does not imply that the cost of a substitute road is the only measure of damages when street rights of way are condemned. *See 3,727.91 Acres of Land,* 563 F.2d at 360 n. 3. "The substitute facilities doctrine is not an exception to the fair market value test but merely an alternative means of deter-

mining just compensation when a public facility is involved." *Id.* at 360; *see also California,* 395 F.2d at 266; *cf. 50 Acres of Land,* 469 U.S. at 31–34, 105 S.Ct. at 455–457 (noting that compensation by the substitute facilities doctrine in one case does not mean it is the proper measure of compensation in another case). "It cannot, consistently with the Fifth Amendment, be used to deny an owner compensation when a taking has inflicted loss." *California,* 395 F.2d at 266. Because the County stipulated that substitute facilities were not required, the court finds that the substitute facilities doctrine does not apply in this case.

■ However, this finding does not indicate that the County is entitled to the fair market value of the rights of way without regard to the burden of dedication. An owner of burdened property is not entitled to compensation as if it were the owner of an unqualified interest in land. *Mayor of Baltimore v. United States,* 147 F.2d 786, 789 (4th Cir.1945). "[T]he Constitution does not require a disregard of the mode of ownership—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him." *Boston Chamber of Commerce v. City of Boston,* 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L.Ed. 725 (1910); *accord Virginia Elec.,* 365 U.S. at 641, 81 S.Ct. at 795; *California,* 395 F.2d at 266 n. 12; *Mayor of Baltimore,* 147 F.2d at 789. The compensation to be paid must be determined by the value of the use to which the owner is entitled and not by the value which the land, if unencumbered, would have. *Mayor of Baltimore,* 147 F.2d at 789. As a result, an owner of property is not entitled to the value of unencumbered land abutting its burdened land. The value of land burdened for street purposes may be diminished by its devotion to that limited purpose. *Id.*

It universally has been held, in the context of the condemnation of streets, that when no substitute facility is necessary and when the lands dedicated as streets cannot be used for any purpose which would bring the public entity profit, the taking results in no loss, and no compensation (except nominal damages) may be recovered. *See, e.g., Streets, Alleys and Public Ways,* 531 F.2d at 885–86; *California,* 395 F.2d at 267; *Franklin County v. United States,* 341 F.2d 106, 106–07 (5th Cir.1965); *Washington v. United States,* 214 F.2d 33, 39 (9th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954); *California v. United States,* 169 F.2d 914, 924 (9th Cir. 1948); *United States v. City of New York,* 168 F.2d 387, 389–90 (2d Cir.1948); *Woodville v. United States,* 152 F.2d 735, 737 (10th Cir.), *cert. denied,* 328 U.S. 842, 66 S.Ct. 1021, 90 L.Ed. 1617 (1946); *Mayor of Baltimore,* 147 F.2d at 789–90. However, these cases were not decided by using the substitute facilities doctrine, as defendant contended. Rather, these decisions rest upon the determination that because these street rights of way were dedicated to nonprofitable uses, and because the substitute facilities doctrine did not apply, the public entity sustained no loss by the taking. *See California,* 395 F.2d at 265 n. 8. In fact, some courts found the public entity benefited from the taking by being relieved of the cost of maintaining the lands as thoroughfares. *Id.*

Although substitute facilities are not required, a public entity may still have suffered damage which is compensable under the Fifth Amendment. *California,* 395 F.2d at 263. Whatever standard for just compensation is used ultimately, "the equitable principles underlying just compensation require that any profitable uses of the lands which are left open by the dedication must be considered in determining the fact of loss and in calculating its monetary equivalent." *California,* 395 F.2d at 267; *see also 3,727.91 Acres of Land,* 563 F.2d at 360. "Just compensation" is measured by what the landowner lost by the taking, and, "absent a need for substitute facilities, this is the value of lands in question burdened as they were." *California,* 395 F.2d at 266. In the final analysis, the dominant consideration is: "What compensation is 'just' both to an owner whose

property is taken and to the public that must pay the bill?" *564.54 Acres of Land,* 441 U.S. at 512, 99 S.Ct. at 1857 (quoting *Commodities Trading Corp.,* 339 U.S. at 123, 70 S.Ct. at 549); *see also 50 Acres of Land,* 706 F.2d at 1359. While the appropriate standard the court uses to determine "just compensation" may differ depending on the facts of the case, the selection of that standard is a question of law to be decided by the trial judge. *See MCI Communications v. AT & T,* 708 F.2d 1081, 1111 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983); *Miller v. United States,* 223 Ct.Cl. 352, 620 F.2d 812, 837 (1980).

### C. Proof of Entitlement to Compensation

The landowner has the burden of establishing loss in a condemnation case, and the court has an independent obligation to assure that the landowner's claim is based only on competent evidence. *See United States v. 10,031.98 Acres of Land,* 850 F.2d 634, 637–38 (10th Cir.1988); *United States v. 158.24 Acres of Land,* 696 F.2d 559, 564 (8th Cir.1982). In order to determine what plaintiff lost by the taking, the court must first determine, as a matter of law, the legal effect of the dedication of the land conveyed to the County. *See California v. United States,* 395 F.2d 261, 266–67 (9th Cir.1968). "[Although] the meaning of 'property' as used ... in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law." *United States ex rel. Tennessee Valley Auth. v. Powelson,* 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390 (1943). Once that question of law is resolved, the court must ascertain the monetary value, if any, of the loss to the County of the lands so burdened. This is an issue of fact. *California,* 395 F.2d at 267.

If the dedication imposed no binding restriction upon the transfer or use of the rights of way, the County may receive "fair market value" for the rights of way as unburdened land. *See id.* at 267. If the use to which the rights of way were restricted was profitable, or did not preclude other profitable uses, it may be possible to

value the rights of way by determining the percentage by which their "fair market value" as unencumbered lands was reduced by those restrictions. *Id.* If not, an estimate of damages may be based upon evidence of all factors indicating net loss to the County, including the capitalization of projected net income. *Id.* However, if it appears that the rights of way were irrevocably dedicated to non-profitable uses at the time of the taking, the County has suffered no loss from the condemnation and may not be compensated under the Fifth Amendment. *See id.*

### D. The County's Ownership Interest

Plaintiff argued at trial that it had a fee simple ownership interest in the rights of way which was not restricted to use and which it could freely dispose of. Therefore, plaintiff claimed that it was entitled to the same fair market value as the adjoining unburdened land based upon its expert's testimony that plaintiff's rights of way, unburdened for street purposes, had the same value as the adjoining privately owned parcels. Defendant, on the other hand, argued that the County's ownership was burdened based on two premises: (1) the rights of way, as dedicated to the County, were burdened for use as streets so the County's loss could be determined only according to the value, if any, of the rights of way as streets, and (2) the County was restricted in its ability to sell the rights of way as unburdened land according to state law.

The court must first determine, as a matter of law, whether the plats and deeds of dedication conveyed the rights of way to the County in fee simple. Four of the five deeds of dedication which conveyed the rights of way to the county specifically stated that the property was conveyed in fee simple for the purpose of streets. Further, the Virginia Code indicates that the recordation of a plat with deeds of dedication "shall operate to transfer, in fee simple, to the [County] such portion of the ... plat set apart for streets...." VA.CODE ANN. § 15.1–478 (Michie 1989). Therefore, because all five of the plats with deeds of

dedication were accepted and recorded, the court finds as a matter of law that the County owned the street rights of way in fee simple.

This question settled, the court must determine, as a matter of law, whether the County's fee simple interest in the rights of way was a fee simple absolute; not restricted either by use or transferability. An owner of property is entitled to have the fair market value of her property determined by reference to its highest and best use. *See Olson v. United States*, 292 U.S. 246, 256–57, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934); *United States v. 91.90 Acres of Land*, 586 F.2d 79, 86 (8th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *Fordyce v. United States*, 7 Cl.Ct. 591, 599 (1985). Ordinarily, this means the use to which the condemned property was subjected at the time of the taking. *Fordyce*, 7 Cl.Ct. at 599–600.

■ As indicated above, the plats and deeds of dedication specifically indicated that the land was being conveyed for the purpose of streets. As a general rule, the terms of a deed of dedication made by a private donor are more strictly construed against a governmental grantee than when the property is acquired by a governmental agency through purchase or condemnation. *Ferreira v. City of Ashbury Park*, 237 N.J.Super. 142, 567 A.2d 233, 239 (1989). In addition, the filing and recordation of these plats and deeds of dedication and the County's acceptance of the plats and deeds of dedication was unmistakably a dedication for public use of the rights of way under Virginia law. *See* VA.CODE ANN. § 15.1–478; *Laughlin v. Morauer*, 849 F.2d 122, 127 (4th Cir.1988); *Brown v.*

*Tazewell County Water & Sewerage Auth.*, 226 Va. 125, 306 S.E.2d 889, 892 (1983). Therefore, it is clear that at the time of the taking the rights of way were burdened for use as streets.

■ Plaintiff cited statutory authority, however, that the County had the right to vacate the street rights of way burden and then sell the property as unburdened land. Although the statutes plaintiff cited at trial do not apply here, other statutory authority does support, at least in theory, plaintiff's position.[3] The Virginia Code permits the governing body of any county to abandon any public road in the State's secondary system of highways if it is deemed to be no longer necessary. *See* VA.CODE ANN. § 33.1–151 (Michie 1990). When a road is abandoned, the land used for that purpose is automatically discharged of its burden for street purposes. *See id.* § 33.1–153; *Board of Supervisors v. Virginia Elec. & Power Co.*, 213 Va. 407, 192 S.E.2d 768, 771 (1972). The Code further permits the County to sell sections of roads abandoned under section 33.1–151 whenever the road is "no longer deemed necessary." VA.CODE ANN. § 33.1–154. However, these statutes do not help plaintiff under the facts of this case.

To warrant admission of testimony as to value for purposes other than that for which the property is used, the landowner must produce "credible evidence that a potential use is reasonably practicable and reasonably probable within the near future...." *United States v. 341.45 Acres of Land*, 633 F.2d 108, 111 (8th Cir.1980), *cert. denied sub. nom., Bassett v. United States*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981) (quoting *United States*

---

**3.** Plaintiff cited section 15.1–262 of the Virginia Code, which gives the County a general right to acquire and sell land, in support of its right to sell the rights of way. VA.CODE ANN. § 15.1–262 (Michie 1989). However, because the Virginia Code specifically provides for the sale of rights of way once the burden for street purposes is vacated, see VA.CODE ANN. §§ 33.1–151, 33.1–165 (Michie 1990), the court finds section 15.1–262 inapplicable in this case. While plaintiff did cite to section 33.1–165 at trial, this section only applies to roads which have not been accepted into the State's secondary road system. *See*

VA.CODE ANN. § 33.1–156. Although the rights of way at issue had not been accepted into the State's system at the time of the trial, plaintiff's witness testified at trial that, absent the taking, the rights of way would have been accepted in the State system. Therefore, the court finds that section 33.1–151, which applies to roads which have been accepted into the State's secondary system, applies to the rights of way at issue. *See* VA.CODE ANN. § 33.1–151. In any event, application of section 33.1–165 would provide the same result in this case.

*v. 320.0 Acres of Land,* 605 F.2d 762, 817 (5th Cir.1979)); *see also Olson,* 292 U.S. at 255, 54 S.Ct. at 708; *158.24 Acres of Land,* 696 F.2d at 562–63. Thus "a proposed 'use' requires a showing of reasonable probability that the land is both physically adaptable for such use *and* that there is a demand for such use in the reasonably near future." *341.45 Acres of Land,* 633 F.2d at 111; ·*see also Fordyce,* 7 Cl.Ct. at 600. Potential uses which are speculative or conjectural may not be considered to determine just compensation. *See Olson,* 292 U.S. at 257, 54 S.Ct. at 709; *320.0 Acres of Land,* 605 F.2d at 814; *United States v. 1,291.83 Acres of Land,* 411 F.2d 1081, 1084 (6th Cir.1969); *Fordyce,* 7 Cl.Ct. at 600.

■ The County's experts testified at trial that excess rights of way in the State of Virginia and in Prince William County were commonly broken up and sold to adjoining property owners, and that the County's rights of way were physically adaptable to being sold in such a fashion. Expert testimony also established that the highest and best use for excess street rights of way is generally the same as that of the adjoining property, and that those excess rights of way are valued at approximately the same dollar amount per square foot as the adjoining properties. However, the County did not provide any credible evidence at trial that the rights of way in question were excess at the time of taking or that it was reasonably probable that they would become excess in the near future. In fact, every expert who testified on the subject, including the County's own experts, indicated that it was not reasonably probable that the County's property could have been used for any purpose other than a public street serving the future landowners in the Williams Center tract absent the taking by the government. A landowner is not entitled to compensation for any value which results only because of the taking. *Olson,* 292 U.S. at 256, 54 S.Ct. at 709.

■ Further, Virginia law would not permit the County to abandon the road under the facts of this case. According to the Virginia Code, a finding that a road is no longer necessary may be made only if, among other things, "[a]lternate routes for use after abandonment of the road are readily available." *Va.Code Ann.* § 33.1–151. The County's experts testified at trial that there would be no access to the interior of the site if these rights of way were abandoned for street purposes. While plaintiff argued at trial that if the interior streets were reconfigured the County could then have abandoned the rights of way at issue and sold them, there is no reasonable basis for this argument in fact or law. At the time of the taking, the developers had already invested several million dollars in the furtherance of development of the tract, including the preliminary grading of the rights of way for streets as platted.

In addition, Virginia's Land Subdivision Law would prohibit the County from selling the rights of way under such circumstances. The plats and deeds of dedication were prepared and recorded according to the requirements of the Virginia Code regulating subdivisions. *See* Va.Code Ann. §§ 15.1–427 through 15.1–503.3. The Virginia Code requires developers to submit proposed site plans for approval. *Id.* § 15.1–475. The acceptance and recordation of a new plat showing any new alignment of the streets would automatically transfer, in fee simple, the new street rights of way to the County and extinguish the County's interest in any rights of way not shown on the replat except interests "acquired by ... condemnation, by purchase for valuable consideration and evidenced by a separate instrument of record, or streets, alleys or easements of public passage subject to the provisions of § 15.1–481 or § 15.1–482...." *Id.* § 15.1–478.

While it is unclear from the facts presented at trial which of these sections would have applied to the rights of way at hand, both produce the same result.[4] These code sections, along with section

---

4. Section 15.1–481 applies to the vacation of any plat or part thereof before the sale of a lot therein, while section 15.1–482 provides for the vacation of plats or parts thereof after the sale of a lot therein. *See* Va.Code Ann. §§ 15.1–481, 15.1–482.

15.1–483, provide for the abandonment or vacation of parts of the plat, including streets, and the acceptance and recordation of such vacation and its effect. *See id.* §§ 15.1–481 through 15.1–483; *see also Tidewater Area Charities v. Harbour Gate Owner's Ass'n,* 240 Va. 221, 396 S.E.2d 661, 664–65 (1990). The recordation of the vacation instrument "shall operate to destroy the force and effect of the recording of the plat or part thereof so vacated, and to vest fee simple title to the centerline of any streets ... so vacated in the owners of abutting lots free and clear of any rights of the public...." Va.Code Ann. § 15.1–483; *see also id.* § 15.1–481. "Thus, upon abandonment, the [County's] fee simple title to the former street [would be] *transferred* to the abutting landowners by operation of law." *Tidewater,* 396 S.E.2d at 665; *see also* 17 Michie's Jur. of Va. & W.Va. *Streets and Highways* § 171 (Supp.1991). Because the County did not acquire its interest in the rights of way through condemnation or by purchase for valuable consideration, the court finds as a matter of law that the County's rights of way were burdened both as to use and transferability.

### E.  The County Did Not Meet Its Burden to Establish Loss

██ As indicated above, "just compensation" in this case must be measured by what the County lost by the taking, i.e., the value of the rights of way burdened as they were. Plaintiff argued at trial that there was case law which supported its position that the United States can not use an easement to diminish the value it ought to pay the County for its fee simple interest in the rights of way. *See Washington Metro. Area Transit Auth. v. One Parcel of Land,* 413 F.Supp. 102 (D.Md.1976). However, this case is not analogous to the case at hand nor does it support plaintiff's position. In *Washington Metropolitan Area Transit Authority v. One Parcel of Land (WMATA),* the court found that the right of way easement for street purposes on the landowners' property would have been permitted to have been abandoned, but for the taking by *WMATA,* and there-

fore the easement could not be used to diminish the value of the landowners' fee simple interest in the underlying land. *Id.* at 106–07. In the case at hand, however, it was established at trial that, but for the taking by the United States, the county's rights of way would not have been abandoned. The court in *WMATA* was merely giving value for a use which was reasonably probable at the time of the taking.

Because the County's rights of way were burdened both by use and transferability, it must have proved at trial that the use to which its rights of way were restricted, public streets, was profitable or did not preclude other profitable uses. The County provided no evidence at trial that it could sell the street rights of way to a private party, or any other entity, for street purposes. In fact, none of the experts who testified at trial were aware of any sales of rights of way for public street purposes. Therefore, it must be assumed that there is no "market" for public streets, at least within the confines of this case. *See United States v. Toronto, Hamilton, & Buffalo Navigation Co.,* 338 U.S. 396, 402, 70 S.Ct. 217, 221, 94 L.Ed. 195 (1949). Under these circumstances "other means of measuring value may have relevance—but only, of course, as bearing on what a prospective purchaser would have paid." *Id.*

Neither parties' expert appraiser testified at trial as to the value of the County's rights of way as burdened for street purposes. While defendant's expert appraiser based his appraisal on the market value of the rights of way as unencumbered land, less percentages for certain other perceived restrictions on the rights of way, he did not provide a percentage reduction based upon the land's burden for street purposes. Rather, his estimate was based upon the value of the rights of way as burdened by encumbrances he perceived lands no longer burdened for street purposes would have, i.e., sewer and water easements. Because plaintiff could not provide the court with evidence that its rights of way as encumbered had value, to prevail it had to provide the court with evidence of other profitable uses of the land as burdened. *See Califor-*

*nia,* 395 F.2d at 267. Plaintiff did not even attempt to do so at trial. As a result, plaintiff did not meet is burden of proof to establish any loss which resulted from the taking.

### III. CONCLUSION

For the reasons stated above, the court finds that plaintiff's rights of way were irrevocably dedicated to non-profitable uses at the time of the taking. The court finds no circumstances here that require suspension of the normal rules for determining just compensation. Because plaintiff provided no evidence of loss as a result of the taking, no compensation may be recovered. All outstanding motions are moot. As this concludes the adjudication of all issues raised by plaintiff, the complaint is dismissed with prejudice. No costs.